**No. 22-11270-BB**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

PROJECT VERITAS

*Plaintiff-Appellant,*

v.

CABLE NEWS NETWORK, INC.

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of Georgia
(Case No. 1:21-cv-01722-SCJ, Hon. Steve C. Jones)

## PRINCIPAL BRIEF OF
## PLAINTIFF-APPELLANT PROJECT VERITAS

HARMEET K. DHILLON
MATTHEW S. SARELSON
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
(415) 433-1700

ELIZABETH M. LOCKE, P.C.
*Counsel of Record*
JOSEPH R. OLIVERI
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7400
libby@clarelocke.com

*Attorneys for Plaintiff-Appellant*

June 22, 2022

*Project Veritas v. Cable News Network, Inc.*
Case No. 22-11270-BB

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

### Corporate Disclosure Statement

Plaintiff-Appellant Project Veritas is a non-profit 501(c)(3) public benefit corporation. Project Veritas has no parent corporation and no publicly held corporation owns 10% or more of its stock.

### Interested Persons

**Baughman, Krista L.** (Counsel for Plaintiff-Appellant)

**Bryan Cave Leighton Paisner LLP** (Law Firm; Counsel for Defendant-Appellee)

**Cable News Network, Inc.** (Defendant-Appellee)

**Chalmers & Adams LLC** (Law Firm; Trial Counsel for Plaintiff-Appellant)

**Chalmers, Jr., Douglas** (Trial Counsel for Plaintiff-Appellant)

**Clare Locke LLP** (Law Firm; Appellate Counsel for Plaintiff-Appellant)

**Coleman, Ronald D.** (Counsel for Plaintiff-Appellant)

**Dhillon, Harmeet K.** (Counsel for Plaintiff-Appellant)

**Dhillon Law Group Inc.** (Law Firm; Counsel for Plaintiff-Appellant)

**Elizabeth M. Locke, P.C.** (Appellate Counsel for Plaintiff-Appellant)

**Historic TW Inc.** (Corporation related to Defendant-Appellee)

**Jones, Hon. Steve C.** (U.S. District Judge, U.S. District Court for the Northern District of Georgia)

**Oliveri, Joseph R.** (Appellate Counsel for Plaintiff-Appellant)

*Project Veritas v. Cable News Network, Inc.*
Case No. 22-11270-BB

**Project Veritas** (Plaintiff-Appellant)

**Project Veritas Action** (A separate 501(c)(4) corporate entity related to Plaintiff-Appellant)

**Sarelson, Matthew S.** (Counsel for Plaintiff-Appellant)

**Schroeder, Eric (**Counsel for Defendant-Appellee)

**Sweigart, Karin M.** (Counsel for Plaintiff-Appellant)

**Underwood, Jr., Brian McKinley** (Counsel for Defendant-Appellee)

**Wagner, Heather** (Trial Counsel for Plaintiff-Appellant)

**Warner Bros. Discovery, Inc. (NASDAQ: WBD)** (Parent corporation of Defendant-Appellee)

**Warner Media, LLC** (Limited liability company related to Defendant-Appellee)

**WarnerMedia Holdings, Inc.** (Corporation related to Defendant-Appellee)

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff-Appellant Project Veritas respectfully submits that oral argument would materially assist the decisional process.  This case presents an issue of fundamental importance—Project Veritas' "right to the protection of [its] own good name," which the Supreme Court has recognized is a "basic ... right" of "our constitutional system."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974).  This case also presents multiple critical errors of law—including the district court's erroneous and unprecedented holding that a factually false statement is "substantially true" under a comparative-harm test that the law squarely rejects— that have improperly denied Project Veritas its day in court to protect its "basic ... right" "to the protection of [its] own good name."

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................. i

TABLE OF AUTHORITIES ..................................................................... v

INTRODUCTION ........................................................................... 1

STATEMENT OF JURISDICTION ................................................................ 4

STATEMENT OF THE ISSUES ................................................................... 4

STATEMENT OF THE CASE .................................................................... 7

      A.      Statement of Facts ................................................................. 7

            1.      Non-Profit, Independent Journalist Project Veritas Uses Twitter to Report News—Including News About CNN. ........... 7

            2.      Veritas Publishes a Report on Twitter and Twitter Suspends Veritas' Account for (Supposedly) Violating Its Policy Against *Publishing Truthful But Private Information*. .............. 8

            3.      CNN and CNN Anchor Ana Cabrera Correctly Report That Twitter Suspended Veritas' Account for Supposedly Violating Twitter's Policy Against *Publishing Private Information*. ............................................................... 9

            4.      Just Days Later, Cabrera Knowingly Lies About Veritas, Falsely Stating on CNN Television That Twitter Suspended Veritas' Account *for Publishing Misinformation*. ................... 11

            5.      Cabrera's False Statement Causes Substantial Harm to Veritas, and CNN and Cabrera Refuse Veritas' Demand to Retract It ...................................................................... 11

      B.      Course of Proceedings Below ........................................................ 12

1.    Veritas Sues CNN for Defamation and CNN Moves to Dismiss.................................................................. 12

2.    The District Court Grants CNN's Motion to Dismiss on the Ground That Cabrera's On-Air Statement Was "Substantially True"—Based on a Comparative Harm Analysis............................................................ 14

C.    Standard of Review ........................................................... 15

SUMMARY OF ARGUMENT ................................................. 15

ARGUMENT............................................................................. 19

I.    The District Court Reversibly Erred by Holding That Cabrera's Statement That Twitter Suspended Veritas for Publishing Misinformation Was "Substantially True"—for Multiple Independent Reasons........................... 19

A.    Cabrera's Defamatory Statement Was Not Substantially True Under the Proper Test for Determining Substantial Truth—Because Cabrera Accused Veritas of an Act of Misconduct It Did Not Commit.............................................................. 19

B.    The District Court Fundamentally Misconstrued the Test for Determining "Substantial Truth"—By Improperly Adopting a Comparative-Harm Test...................................................... 24

C.    Veritas Satisfied Even the District Court's Improper Comparative Harm Test for Substantial Truth—But the District Court Ignored Veritas' Well-Pled Facts and Found Facts Outside the Pleadings in Holding Otherwise. .......................................................... 29

II.    Veritas' Complaint More Than Sufficiently Pled Actual Malice................. 34

A.    Veritas Pled Facts Constituting Direct Evidence of Actual Malice... 36

B.    Veritas Pled Facts Constituting Circumstantial Evidence of Actual Malice.......................................................... 37

CONCLUSION.......................................................... 42

iii

CERTIFICATE OF COMPLIANCE ......................................................................... 44

CERTIFICATE OF SERVICE ................................................................................ 45

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agbimson v. Handy*,
   No. 17-cv-9252, 2019 WL 3817207 (S.D.N.Y. Aug. 14, 2019) ...................... 21

*Air Wis. Airlines Corp. v. Hoeper*,
   571 U.S. 237 (2014) ........................................................................................ 27

*Alpha Recycling, Inc. v. Crosby*,
   No. 14-cv-5015, 2016 WL 1178774 (S.D.N.Y. Mar. 23, 2016) ........................ 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 15

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015) ........................................................................... 40

*\*Buckley v. Littell*,
   539 F.2d 882 (2d Cir. 1976) ...................................................................... 5, 31

*Bustos v. A & E Television Networks*,
   646 F.3d 762 (10th Cir. 2011) ................................................................. 22, 29

*Cafferty v. Southern Tier Publ'g Co.*,
   226 N.Y. 87 (1919) ........................................................................................ 21

*Calhoun v. Cooper*,
   206 A.D.2d 497 (2d Dep't 1994) .................................................................... 30

*Cavalieri v. Avior Airlines C.A.*,
   25 F.4th 843 (11th Cir. 2022) ......................................................................... 34

*\*Celle v. Filipino Rep. Enters. Inc.*,
   209 F.3d 163 (2d Cir. 2000) ................................................. 6, 35, 37, 38, 40, 42

*\*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014) ............................................................. 2, 4, 16, 20

*Dalbec v. Gentleman's Companion, Inc.*,
  828 F.2d 921 (2d Cir. 1987) ............................................................... 35

*Desnick v. Am. Broad. Cos.*,
  44 F.3d 1345 (7th Cir. 1995) ............................................................. 28

*Dibble v. WROC TV Channel 8*,
  142 A.D.2d 966 (4th Dep't 1988)............................................... 23, 24

*Duffy v. Leading Edge Prods., Inc.*,
  44 F.3d 308 (5th Cir. 1995) ............................................................... 40

*Edward B. Beharry & Co. v. Bedessee Imports Inc.*,
  No. 09-cv-77, 2010 WL 1223590 (E.D.N.Y. Mar. 23, 2010) ........................... 21

*Eramo v. Rolling Stone, LLC*,
  209 F. Supp. 3d 862 (W.D. Va. 2016) ................................................. 37

*\*Fleckenstein v. Friedman*,
  266 N.Y. 19 (1934) ............................................................... 16, 20, 21

*Franklin v. Daily Holdings, Inc.*,
  135 A.D.3d 87 (1st Dep't 2015) ......................................................... 20

*Friedman v. Rice*,
  5 N.Y.S.3d 816 (Sup. Ct. 2015),...................................................... 29

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)..................................................................... i

*Gertz v. Robert Welch, Inc.*,
  680 F.2d 527 (7th Cir. 1982) ............................................................. 39

*Golden Bear Distrib. Sys. of Tex., Inc. v. Chase Revel, Inc.*,
  708 F.2d 944 (5th Cir. 1983) ............................................................. 37

*Goldman v. Reddington*,
  417 F. Supp. 3d 163 (E.D.N.Y. 2019) ............................................. 16, 21

*Goldwater v. Ginzburg*,
  414 F.2d 324 (2d Cir. 1969) .......................................................... 6, 38

*Graterol-Garrido v. Vega*,
  No. 20-cv-4209, 2021 WL 1541455 (S.D.N.Y. Apr. 20, 2021) ........................ 22

*Harris v. City of Seattle*,
  152 F. App'x 565 (9th Cir. 2005) ................................................... 39

*\*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989) .................................................... 6, 35, 38, 40, 42

*Hawkins v. Mercy Health Servs., Inc.*,
  583 N.W.2d 725 (Mich. Ct. App. 1998) .......................................... 26

*Haynes v. Alfred A. Knopf, Inc.*,
  8 F.3d 1222 (7th Cir. 1993) ..................................................... 27, 28

*Herbert v. Lando*,
  441 U.S. 153 (1979) ................................................................. 35

*Hunt v. Liberty Lobby*,
  720 F.2d 631 (11th Cir. 1983) .................................................... 38

*Hutchinson v. Proxmire*,
  443 U.S. 111 (1979) ................................................................. 35

*\*Jewell v. NYP Holdings, Inc.*,
  23 F. Supp. 2d 348 (S.D.N.Y. 1998) ............................... 3, 4, 17, 25, 29

*John Langenbacher Co. v. Tolksdorf*,
  199 A.D.2d 64 (1st Dep't 1993) ................................................... 42

*Kaelin v. Globe Commc'ns Corp.*,
  162 F.3d 1036 (9th Cir. 1998) .................................................... 35

*Kerwick v. Orange Cnty. Publ'ns Div. of Ottaway Newspapers, Inc.*,
  53 N.Y.2d 625 (1981) ...................................................... 6, 40, 42

*Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*,
  --- F. Supp. 3d ----, 2021 WL 5909976 (S.D.N.Y. 2021) .................... 42

*Leffler v. Kotick*,
  187 A.D.3d 543 (1st Dep't 2020) ................................................. 20

*Lemelson v. Bloomberg, L.P.*,
   903 F.3d 19 (1st Cir. 2018) .................................................................. 37

*Liberty Lobby, Inc. v. Anderson*,
   746 F.2d 1563 (D.C. Cir. 1984) ......................................................... 22

*Lopez v. Univision Commc'ns, Inc.*,
   45 F. Supp. 2d 348 (S.D.N.Y. 1999) .................................................. 22

*Manson v. Little Rock Newspapers, Inc.*,
   42 F. Supp. 2d 856 (E.D. Ark. 1999),
   *aff'd*, 200 F.3d 1172 (8th Cir. 2000) .................................................. 31

*Masson v. New Yorker Mag., Inc.*,
   501 U.S. 496 (1991) .................................................................... 20, 27

*\*Mitre Sports Int'l Ltd. v. Home Box Off., Inc.*,
   No. 08-cv-9117, 2010 WL 1507792 (S.D.N.Y. Apr. 15, 2010) ....... 23, 24, 26, 27

*Morgan v. Dun & Bradstreet, Inc.*,
   421 F.2d 1241 (5th Cir. 1970) ........................................................... 41

*N.Y. Times v. Sullivan*,
   376 U.S. 254 (1964) ......................................................................... 34

*Nelson v. McClatchy Newspapers, Inc.*,
   936 P.2d 1123 (Wash. 1997) ............................................................ 31

*Newspaper Guild v. NLRB*,
   636 F.2d 550 (D.C. Cir. 1980) ......................................................... 31

*OAO Alfa Bank v. Ctr. for Pub. Integrity*,
   387 F. Supp. 2d 20 (D.D.C. 2005) .................................................... 35

*Palin v. N.Y. Times Co.*,
   940 F.3d 804 (2d Cir. 2019) ................................................... 35, 37, 38

*Rizvi v. N. Shore Hematology-Oncology Assocs., P.C.*,
   69 Misc. 3d 1212 (Sup. Ct. 2020) ..................................................... 23

*Schafer v. Time, Inc.*,
   142 F.3d 1361 (11th Cir. 1998) ......................................................... 41

*Sharon v. Time, Inc.*,
  599 F. Supp. 538 (S.D.N.Y. 1984) ................................................. 6, 39

*Shoen v. Shoen*,
  48 F.3d 412 (9th Cir. 1995) ................................................. 40

*Shulman v. Hunderfund*,
  12 N.Y.3d 143 (2009) ................................................. 20

*Stern v. Cosby*,
  645 F. Supp. 2d 258 (S.D.N.Y. 2009) ................................................. 29

*Sun Printing & Publ'g Ass'n v. Schenck*,
  98 F. 925 (2d Cir. 1900) ................................................. 3, 17, 25

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017) ................................................. 20

*Tavoulareas v. Piro*,
  763 F.2d 1472 (D.C. Cir. 1985) ................................................. 6, 41

*Tims v. LGE Cmty. Credit Union*,
  935 F.3d 1228 (11th Cir. 2019) ................................................. 15

*Toomey v. Farley*,
  2 N.Y.2d 71 (1956) ................................................. 17, 30

*Vandenburg v. Newsweek, Inc.*,
  441 F.2d 378 (5th Cir. 1971) ................................................. 38

*Ventura v. Kyle*,
  63 F. Supp. 3d 1001 (D. Minn. 2014),
  *rev'd on other grounds*, 825 F.3d 876 (8th Cir. 2016) ................................................. 41

*Wallace v. Media News Grp., Inc.*,
  568 F. App'x 121 (3d Cir. 2014) ................................................. 26

*Wilson v. Cable News Network, Inc.*,
  444 P.3d 706 (Cal. 2019) ................................................. 5, 34

*Yammine v. DeVita*,
  43 A.D.3d 520 (3d Dep't 2007) ................................................. 3, 5, 17, 30

*Zerangue v. TSP Newspapers, Inc.*,
  814 F.2d 1066 (5th Cir. 1987) ............................................................ 41

**Statutes and Rules**

28 U.S.C. §1291 ................................................................................ 4

28 U.S.C. §1332 ................................................................................ 4

Fed. R. App. P. 4 .............................................................................. 4

**Other Authorities**

1 Rodney A. Smolla, *Law of Defamation* §3:71 (2d ed. 2022) ............................. 39

*1 Rodney A. Smolla, *Law of Defamation* §5:20 (2d ed. 2022) ............... 17, 23, 24

10B Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* §2730 ........................... 35

8A Stuart M. Speiser et al., *Am. Law of Torts* §29:86 ........................................... 25

Am. Press Inst., *Journalism as a Discipline of Verification* ................................... 32

Bill Kovach & Tom Rosenstiel, *The Elements of Journalism* (4th ed. 2021) .... 5, 32

Chicago Tribune, *Tribune Code of Editorial Principles* ........................................ 33

Clay Calvert, *The First Amendment, Journalism & Credibility:*
  *A Trio of Reforms for a Meaningful Free Press More Than Three*
  *Decades After* Tornillo, 4 First Amend. L. Rev. 9 (2005) .................................. 32

L.A. Times, *Ethics Guidelines* ............................................................................... 33

Matthew C. Ehrlich, *Hollywood and Journalistic Truthtelling*,
  19 Notre Dame J.L. Ethics & Pub. Pol'y 519 (2005) ......................................... 32

N.Y. Times, *Ethical Journalism* ............................................................................ 33

N.Y. Times, *Guidelines on Integrity* ............................................................... 33, 42

Restatement (Second) of Torts §581A ............................................................ 17, 25

Wash. Post, *About the Post* .................................................................................. 33

William Prosser & Robert Keeton, *The Law of Torts* 841 (5th ed. 1984) .............. 26

## **INTRODUCTION**

This case arises from CNN's publication of false and defamatory statements accusing Project Veritas of publishing false information when, in fact, CNN knew that Veritas had published truthful but (supposedly) private information.  In the world of journalism, the difference between the two cannot be overstated:  while the former is the death knell for professional journalists, the latter is the stuff of accolades and awards.  Stephen Glass and Sabrina Ruben Erdely no longer have careers in the industry, while The New York Times has won Pulitzers for stories like the Pentagon Papers.  Here, the district court failed to appreciate this fundamental difference and erred legally as a result, misapplying the "substantial truth" doctrine and then compounding that error by improperly (and incorrectly) finding facts at the motion-to-dismiss stage.

On February 11, 2021, Veritas published on its official Twitter account a video report showing a reporter's attempt to interview a high-ranking Facebook official outside a residence.  Although the report did not indicate the State, city, or even street where it was filmed, a house number was visible in the background, and on that basis Twitter permanently suspended Veritas' account for (supposedly) violating its policy against publishing *truthful* but private information.  Both CNN and CNN Anchor Ana Cabrera reported exactly that, in an article and a "tweet,"

respectively.  There was no allegation that what Veritas published was in any way false—because it was not.

But just four days later, Cabrera turned around and stated on CNN national television that Twitter had suspended Veritas for publishing *misinformation* (which CNN concedes means "false information").  Cabrera's statement was plainly false, and she and CNN knew it—as confirmed by her tweet and CNN's reporting just days earlier.  But Cabrera and CNN ignored the truth to attack Veritas' credibility and integrity, leveling perhaps the most damaging accusation possible against a journalistic organization.  Because Cabrera and CNN refused to correct the record, Veritas sued CNN for defamation.

Despite the plain factual falsity of Cabrera's accusation, the district court dismissed Veritas' defamation claim on the ground that Cabrera's accusation was "substantially true."  The district court reached that holding *not* because it held that "the overall gist or substance of [Cabrera's] statement is true"—which is the proper standard under New York law, *e.g.*, *Chau v. Lewis*, 771 F.3d 118, 129-30 (2d Cir. 2014)—but by comparing the magnitude of harm that it believed Veritas suffered from Cabrera's defamatory statement to the magnitude of harm it believed Veritas would have suffered if Cabrera had instead reported the truth, and then concluding, as a matter of law, that those two harms were equivalent.  (A51.)

2

In so doing, the district court fundamentally erred in multiple ways. To begin, the court failed to apply the correct test for substantial truth, and instead adopted a comparative-harm test even though "the substantial truth doctrine is *not* concerned with harm," *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 394 (S.D.N.Y. 1998), and it has long been the law that "[i]t is *not* a defense to a libel or slander that the plaintiff has been guilty of offenses other than those imputed to him, or of offenses of a similar character," *Sun Printing & Publ'g Ass'n v. Schenck*, 98 F. 925, 926 (2d Cir. 1900).[1] The court then compounded its error by impermissibly finding facts against Veritas at the pleadings stage, including on the question of harm, even though the issue of harm presents a question of fact "peculiarly within the jury's province." *Yammine v. DeVita*, 43 A.D.3d 520, 521 (3d Dep't 2007). Veritas pled extensive facts that Cabrera's defamatory accusation that Veritas published "misinformation" is far more damaging than a statement that it published truthful but (supposedly) private information. (A7, A22, ¶¶2, 58-59.) Indeed, Veritas pled that for a journalistic organization like it, credibility and integrity are paramount, and accusations of publishing misinformation uniquely attack that credibility and integrity and impute conduct "incompatible with" and "disqualification to fulfill"

---

[1] Emphasis added unless otherwise noted.

the business of "an investigative journalism organization." (*Id.*)  But the district court ignored those well-pled facts—and found to the contrary as a matter of law.

Simply put: A materially false statement is not "substantially true."  To vindicate that commonsense proposition, this Court must reverse the decision below.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. §1332 because there was (and is) complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.  The district court dismissed Veritas' Complaint on March 17, 2022 (A33-55) and entered final judgment on March 18, 2022 (A56).  Under Federal Rule of Appellate Procedure 4(a)(1)(A), Veritas timely filed its Notice of Appeal on April 12, 2022, fewer than 30 days after the district court's final judgment.  (A57-60.)  This Court has jurisdiction to hear Veritas' appeal from that final judgment under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

1.    Under New York defamation law, a defamatory statement is only "substantially true" if "the overall gist or substance of the challenged statement is true";[2] "the substantial truth doctrine is not concerned with harm."[3]  Defendant-

[2] *Chau v. Lewis*, 771 F.3d 118, 129-30 (2d Cir. 2014).

[3] *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 394 (S.D.N.Y. 1998).

Appellee CNN (through anchor Ana Cabrera) stated that Twitter suspended Veritas for publishing *misinformation* (*i.e.*, false information) when, in reality, Twitter suspended Veritas for publishing *truthful* but (supposedly) private information. The district court expressly recognized the difference between CNN's false statement and the truth but nevertheless held CNN's statement "substantially true"—and dismissed Veritas' defamation claim—because, it concluded, CNN's false statement would do no more *harm* to Veritas' reputation than the truth. Did the court err in adopting and applying a comparative-harm test for substantial truth?

2.    It is axiomatic that the integrity and credibility of a journalistic organization are paramount to its ability to perform its business.[4] And it is equally axiomatic that the issue of harm "is peculiarly within the jury's province."[5] Even if the district court's comparative-harm test for substantial truth were correct (it is not), did the court err by substituting its own judgment for that of the jury and holding, as a matter of law on the pleadings, that CNN's false statement that Veritas was suspended from Twitter for publishing *"misinformation"* was no more harmful (as a matter of law) to Veritas' reputation than a true statement that Veritas was

---

[4] *E.g.*, *Buckley v. Littell*, 539 F.2d 882, 896-97 (2d Cir. 1976); *Wilson v. Cable News Network, Inc.*, 444 P.3d 706, 722 (Cal. 2019); Bill Kovach & Tom Rosenstiel, *The Elements of Journalism* 45 (4th ed. 2021).

[5] *E.g.*, *Yammine v. DeVita*, 43 A.D.3d 520, 521 (3d Dep't 2007).

suspended from Twitter for publishing *truthful* but (supposedly) private information?

3. Although the district court did not reach the issue, CNN argued below that Veritas failed to plead actual malice. Veritas pled that just four days before CNN (through anchor Ana Cabrera) falsely broadcast that Twitter had suspended Veritas for publishing misinformation, Cabrera truthfully tweeted and CNN truthfully reported that Twitter had suspended Veritas' account for publishing truthful but (supposedly) private information. Veritas thus pled that CNN (and Cabrera) had actual knowledge of the reason for Veritas' suspension but lied about it. Veritas also pled facts constituting well-recognized circumstantial evidence of actual malice, including facts demonstrating CNN's pursuit of a preconceived storyline and disregard of contradictory evidence,[6] motive to defame and bias against Veritas,[7] failure to comply with journalistic standards,[8] and refusal to retract its defamatory statements.[9] Did Veritas sufficiently plead actual malice?

---

[6] *E.g.*, *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir. 1969); *Sharon v. Time, Inc.*, 599 F. Supp. 538, 576 (S.D.N.Y. 1984).

[7] *E.g.*, *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 183, 186, 189 (2d Cir. 2000).

[8] *E.g.*, *Kerwick v. Orange Cnty. Publ'ns Div. of Ottaway Newspapers, Inc.*, 53 N.Y.2d 625, 627 (1981); *Connaughton*, 491 U.S. at 693.

[9] *E.g.*, *Tavoulareas v. Piro*, 763 F.2d 1472, 1477 (D.C. Cir. 1985).

## <u>STATEMENT OF THE CASE</u>

**A.    Statement of Facts**

This case arises from CNN Anchor Ana Cabrera's publication of a false and defamatory statement accusing Veritas of publishing misinformation—*i.e.*, false information[10]—despite having actual knowledge that her accusation was completely false.

### 1.    Non-Profit, Independent Journalist Project Veritas Uses Twitter to Report News—Including News About CNN.

Veritas—a non-profit, 501(c)(3) public-benefit corporation—is a journalistic organization that "investigates and exposes corruption, dishonesty, self-dealing, waste, fraud, and other misconduct in public and private institutions." (A12-13, ¶20.) To further its "goal of ... enhancing ethical conduct and institutional transparency," Veritas' "journalists often work undercover and enlist the help of whistleblowing insiders to identify and expose institutional corruption through the use of audio or video recordings [that] corroborate what they learn concerning the subjects of their investigations," including fellow media entities. (A13, ¶¶21-23.) Like many other journalistic organizations, Veritas uses Twitter to publish its news reports and videos. (A13, ¶25.)

---

[10] CNN conceded below that "misinformation" means "false information." (DE 20-1 at 18.)

As relevant here, Veritas has frequently reported about CNN as part of its efforts to ensure transparency in the media industry.  (A13, A21, ¶¶24, 51.)  Veritas has published numerous exposés "call[ing] into question the accuracy and integrity of CNN's reporting," including "videos of CNN employees making statements that appear to show significant bias in reporting, and leaked tapes of network executives and staffers in editorial meetings" that "suggest[] CNN's intent to bolster [] stated position[s] on controversial issues."  (A21, ¶51.)  CNN has responded to Veritas' reporting with substantial animosity, including by branding Veritas a "right-wing" group that employs "ethically dubious reporting strategies,"[11] and even baselessly reporting it to law enforcement.  (A21, ¶51.)

### 2. Veritas Publishes a Report on Twitter and Twitter Suspends Veritas' Account for (Supposedly) Violating Its Policy Against *Publishing Truthful But Private Information*.

On February 11, 2021, Veritas published on its official Twitter account a video report showing one of its reporters attempting to interview Facebook vice president Guy Rosen outside a residence.  (A8, A14, ¶¶4, 26.)  Although the report did not indicate the State, city, or even street where it was filmed, a house number was visible in the background while the reporter asked Mr. Rosen questions that he

---

[11] Oliver Darcy, *Right-Wing Group Targets New York Times Reporters Who Have Aggressively Reported on Its Spy Tactics*, CNN (Mar. 11, 2022), https://www.cnn.com/2022/03/11/media/project-veritas-new-york-times/index.html.

refused to answer. (A14, ¶27.) Broadcasting such attempted interviews—even with a house number visible in the background—is a common journalistic practice, and such videos are regularly posted on Twitter without incident, including by CNN. (A14-15, ¶¶27-29.)[12]

Nevertheless, later that same day, because a house number was visible in Veritas' video, Twitter permanently suspended Veritas' account *for violating its policy against publishing truthful but "private" information*. (A9, A14, ¶¶5, 27.)[13] There was no suggestion that Veritas' report contained any false information—only truthful but (supposedly) private information. (*Id.*)

> ### 3. CNN and CNN Anchor Ana Cabrera Correctly Report That Twitter Suspended Veritas' Account for Supposedly Violating Twitter's Policy Against *Publishing Private Information*.

CNN and CNN Anchor Ana Cabrera immediately reported on Twitter's suspension of Veritas' account. On the same day Twitter suspended Veritas' account—February 11, 2021—CNN published an article reporting on the suspension *and the reason for it*:

---

[12] Twitter permitted a CNN video showing the home address of a private individual to remain on its platform. (A14-15, ¶¶28-29.)

[13] Paragraph 27 of the Complaint contains a typographical error: it lists a date of "February *22*" instead of "February *11*." As the Complaint elsewhere makes clear, Twitter suspended Veritas' account on February *11*. (*See, e.g.*, A9, ¶5.)

> Twitter permanently banned an account on Thursday belonging to Project Veritas....
>
> The decision followed what a Twitter (TWTR) spokesperson described to CNN Business as repeated *violations of the platform's policies prohibiting sharing—or threats of sharing—other people's private information without consent.*

(A9, A16, ¶¶6, 31.)[14]  Also on that same day, CNN Anchor Ana Cabrera tweeted about Veritas' suspension *and the reason for it*:

> NEW: Twitter permanently bans Project Veritas
>
> The decision followed what a Twitter spokesperson described to CNN as repeated *violations of Twitter's policies prohibiting the sharing—or threats of sharing—of other people's private information without consent.*

(A9, A17, ¶¶6, 37.)[15]  CNN's article and Cabrera's tweet were clear in reporting that Twitter had suspended Veritas' account for publishing supposedly private information—they did not remotely suggest Veritas had been suspended for publishing false information, because it had not been.  (*See id.*)

---

[14] Brian Fung, *Twitter Permanently Bans Project Veritas Account*, CNN (Feb. 11, 2021), https://www.cnn.com/2021/02/11/tech/twitter-project-veritas/index.html (cited at A9, A16, ¶¶6, 31).

[15] Ana Cabrera (@AnaCabrera), Twitter (Feb. 11, 2021, 4:27pm), https://twitter.com/anacabrera/status/1359977301312761857 (cited at A9, A17, ¶¶6, 37).

4.    **Just Days Later, Cabrera Knowingly Lies About Veritas, Falsely Stating on CNN Television That Twitter Suspended Veritas' Account *for Publishing Misinformation*.**

Just four days later, and notwithstanding her prior (truthful) reporting, Cabrera falsely told a national audience on CNN television that Twitter had suspended Veritas' account *for publishing misinformation* (*i.e.*, false information). During a February 15, 2021 on-air discussion, Cabrera reported:

> We're starting to see companies cracking down to try to stop *the spread of misinformation* and to hold some people who are spreading it accountable, Brian. *For example, Twitter has suspended the account of Project Veritas*, a conservative activist, uh, activist organization. At least that's how they couch themselves with followers …. But this is part of a much broader crackdown, as we mentioned, by social media giants on *accounts that are promoting misinformation*.

(A17-18, ¶39.)

Cabrera and CNN thus intentionally lied about Veritas, falsely accusing it of publishing *misinformation* despite knowing that Veritas had actually been suspended from Twitter for publishing *truthful* but (supposedly) private information. (A10, A18-19, ¶¶8-10, 42-43.)

5.    **Cabrera's False Statement Causes Substantial Harm to Veritas, and CNN and Cabrera Refuse Veritas' Demand to Retract It.**

By accusing Veritas of publishing misinformation, Cabrera and CNN leveled the most serious and damaging accusation possible against it: attacking the veracity and credibility of Veritas' reporting and thereby directly imputing to Veritas

unfitness to engage in its business as an investigative journalism organization. (A19, A22, ¶¶44, 55-58.) Accordingly, that same day, Veritas demanded a retraction from CNN and Cabrera. (A19-20, ¶45.)

CNN and Cabrera, however, refused to correct the record. (A19-20, ¶¶45-46.) In a letter from their counsel, CNN and Cabrera expressly refused to issue a retraction or correction, stating only that they did not believe their statement was "defamation *per se*." (A19-20, ¶45.) Notably, CNN and Cabrera did not even attempt to defend their statement as true—because it plainly is not. (*Id.*) Left with no other choice, Veritas filed this lawsuit.

## B.    Course of Proceedings Below

### 1.    Veritas Sues CNN for Defamation and CNN Moves to Dismiss.

Veritas filed its complaint on June 15, 2021, asserting a defamation claim against CNN based on Cabrera's false statement on CNN television that Twitter had suspended Veritas for publishing and "promoting misinformation." (A20-23, ¶¶47-59.) Veritas pled that Cabrera's statement is demonstrably false: Twitter did *not* suspend Veritas' account for publishing or promoting misinformation, but rather for publishing truthful information that Twitter deemed to be "private." (A10, A18-19, A20, ¶¶8-10, 42-43, 49.) Veritas further pled that Cabrera (and, thus, CNN) had actual knowledge of their statement's falsity, including because just four days earlier, Cabrera had tweeted and CNN had reported that Twitter suspended Veritas

for publishing (supposedly) private information in (supposed) violation of Twitter's policy prohibiting the publication of truthful but private information without consent. (A9, A16, A17, A20-21, ¶¶6, 31, 37, 50-51.) And Veritas pled that Cabrera's accusation caused it substantial harm, including by "imput[ing] general disqualification to fulfill its function as an investigative journalism organization by lowering the credibility of its reporting and [] reputation for veracity." (A22, ¶¶55-58.)

CNN moved to dismiss under Rule 12(b)(6), contending that Cabrera's statement was "substantially true" and that even if it were not, Cabrera did not make it with actual malice. (A28-32.) In asserting that Cabrera's statement was "substantially true," CNN invited the district court to err by fundamentally misconstruing the substantial truth inquiry. According to CNN, its defamatory statement was "substantially true"—regardless of the true facts—because:

> To the average viewer, there is no material difference from a reputational standpoint between being banned for "misinformation" and being banned for posting prohibited [truthful but private] information (or threatening to share it).

(DE 20-1 at 16.) CNN's actual malice argument rehashed its substantial truth argument. (*Id.* at 20-21.)

2.      **The District Court Grants CNN's Motion to Dismiss on the Ground That Cabrera's On-Air Statement Was "Substantially True"—Based on a Comparative Harm Analysis.**

The district court granted CNN's motion to dismiss.  (A55.)  Applying New York law, the court first concluded—correctly—that Cabrera's on-air statement reasonably conveyed that "Veritas was suspended from Twitter for promoting misinformation," and that Veritas plausibly pled that Cabrera "intended or endorsed" that meaning.  (A46-48.)

But, in considering the question of substantial truth, the district court accepted CNN's invitation to err.  Although the court expressly acknowledged that there is a difference between accusing Veritas of publishing misinformation (what CNN falsely said) and publishing truthful but private information (what Twitter actually accused Veritas of doing), the court evaluated the "substantial truth" of Cabrera's statement by comparing what it believed to be the *harmfulness* of Cabrera's false statement to what it believed to be the *harmfulness* of the truth:

> While Project Veritas asserts that CNN's statements implying that Project Veritas was banned from Twitter for spreading misinformation maligns its "journalistic integrity," the pleaded truth of being accused of violating [Twitter's private information policy] ***similarly maligns*** a journalist's professional reputation.  ***In essence, "substitute the true for the false and the damage to plaintiff's reputation would be no less."***  Furthermore, while there is some difference between violating a policy by providing incorrect or misleading information and violating a policy by truthfully providing someone's private information (and potentially exposing a person to harm), the distinction is not enough to

14

make the statement at issue actionable as both violations are ***similarly damaging to the journalist's reputation***.

(A51 (brackets, ellipsis, and citations omitted).)  And because the district court found that the harmfulness of falsely accusing Veritas of publishing misinformation was no more than the harmfulness of truthfully stating that Veritas published truthful but private information—despite the issue of harm presenting a question of fact—the court held Cabrera's statement to be substantially true.  (*Id.*)  The court granted CNN's motion on that basis without considering CNN's actual malice argument and entered judgment for CNN the next day.  (A55-56.)  This appeal follows.  (A57-60.)

### C.    Standard of Review

This Court "review[s] *de novo* a district court's grant of a motion to dismiss for failure to state a claim under [Rule 12(b)(6)] ... accept[ing] factual allegations in the complaint as true and constru[ing] them in the light most favorable to the plaintiff." *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). A plaintiff need only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This standard is "not a probability requirement"; it simply "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### **<u>SUMMARY OF ARGUMENT</u>**

On February 15, 2021, CNN Anchor Ana Cabrera told a national television audience that Veritas had been suspended from Twitter because it published and

"promot[ed] *misinformation*." (A17-18, ¶39.) But that statement was false. In fact, Veritas had been suspended from Twitter because it published *truthful* information that Twitter believed violated its policy against publishing truthful but private information. (A9, A14, ¶¶5, 27.) There was no suggestion that what Veritas had published was false. (*Id.*) And Cabrera knew that and even tweeted about that real reason for Veritas' suspension just four days earlier. (A9, A17, ¶¶6, 37.) Her February 15 statement was factually false. But the district court held it to be "substantially true" because it believed that the harm Veritas suffered from Cabrera's false statement (accusing Veritas of publishing misinformation) was the same as the harm Veritas would have suffered had Cabrera reported the truth (that Veritas published truthful but (supposedly) private information). In so doing, the district court reversibly erred in multiple ways.

*First*, the district court failed to apply the proper test for determining whether a statement is "substantially true." Under New York law, a defamatory statement is only "substantially true" if "the overall gist or substance of the challenged statement is true." *Chau v. Lewis*, 771 F.3d 118, 129-30 (2d Cir. 2014). "In other words," a statement can only be substantially true "'[w]hen the truth is so near to the facts as published that fine and shaded distinctions must be drawn ... to sustain a charge of libel.'" *Goldman v. Reddington*, 417 F. Supp. 3d 163, 171 (E.D.N.Y. 2019) (quoting *Fleckenstein v. Friedman*, 266 N.Y. 19, 23 (1934)). Thus, a statement that "charges

an act of misconduct" that the plaintiff did not actually "engage[] in," is not substantially true. 1 Rodney A. Smolla, Law of Defamation §5:20 (2d ed. 2022). Under that test, Cabrera's defamatory statement is plainly not "substantially true."

   ***Second***, in place of the proper test for substantial truth, the district court adopted a comparative-harm test that the law expressly rejects. "[T]he substantial truth doctrine is *not* concerned with harm," *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 394 (S.D.N.Y. 1998), and, as such, "[i]t is not a defense to a libel or slander that the plaintiff has been guilty of offenses other than those imputed to him, or of offenses of a similar character," *Sun Printing & Publ'g Ass'n v. Schenck*, 98 F. 925, 926 (2d Cir. 1900); Restatement (Second) of Torts §581A cmt. f (It is "the truth or falsity of the particular charge that is to be determined. It is not enough that the accused person is found to have engaged in some other substantially different kind of misconduct even though it is equally or more reprehensible.").

   ***Third***, the district court compounded its error by misapplying its own improper comparative-harm test in multiple ways. To begin, even though assessing the gravity of damage caused by a defamatory statement presents a question of fact "peculiarly within the jury's province," *e.g.*, *Yammine v. DeVita*, 43 A.D.3d 520, 521 (3d Dep't 2007); *Toomey v. Farley*, 2 N.Y.2d 71, 83 (1956), the court ignored Veritas' well-pled facts that Cabrera's defamatory accusation that Veritas published and promoted "misinformation" is far more damaging than a statement that it

published truthful but (supposedly) private information.  (A7-8, A22-23, ¶¶2, 58-59.)  As Veritas pled, for a journalistic organization, credibility and integrity are paramount, and accusations of publishing misinformation (unlike accusations of publishing truthful but private information) directly attack that credibility and integrity and impute conduct "incompatible with" and "disqualification to fulfill" the business of "an investigative journalism organization."  (*Id.*)  Those well-pled facts are not conclusory, and substantial caselaw and leading authorities confirm them.  But the district court impermissibly ignored them—and found to the contrary as a matter of law.

**Finally**, although the district court did not reach the issue, CNN argued below that Veritas failed to plead actual malice.  But Veritas pled facts demonstrating that Cabrera (and CNN) had actual knowledge that their defamatory statement was false: Cabrera tweeted and CNN reported just four days earlier that Twitter suspended Veritas for publishing truthful but (purportedly) private information—not for publishing misinformation.  Veritas further pled facts constituting not only direct evidence of actual malice, but also well-recognized circumstantial evidence of actual malice, including facts demonstrating CNN's pursuit of a preconceived storyline and disregard of contradictory evidence, motive to defame and bias against Veritas, failure to comply with journalistic standards, and refusal to retract its defamatory statements.

18

## ARGUMENT

**I.    The District Court Reversibly Erred by Holding That Cabrera's Statement That Twitter Suspended Veritas for Publishing Misinformation Was "Substantially True"—for Multiple Independent Reasons.**

The district court fundamentally erred in holding that Cabrera's and CNN's defamatory statement that Twitter had suspended Veritas for publishing and "promoting misinformation" was substantially true.  The court first ignored the settled test for determining substantial truth—under which Cabrera's statement was plainly not substantially true.  The court then adopted a comparative-harm test for substantial truth that the law expressly rejects.  It then misapplied its own improper test by ignoring Veritas' well-pled facts and the caselaw and authorities under which Veritas more than satisfied even the court's erroneous test.

**A.    Cabrera's Defamatory Statement Was Not Substantially True Under the Proper Test for Determining Substantial Truth— Because Cabrera Accused Veritas of an Act of Misconduct It Did Not Commit.**

Cabrera's defamatory statement that Twitter suspended Veritas for publishing and promoting *misinformation*—when in reality Twitter suspended Veritas for publishing *truthful* but (supposedly) private information—is plainly false under New York defamation law.  To satisfy the falsity element of a defamation claim at the pleadings stage, a plaintiff need only "allege that the complained of statement is 'substantially false.'"  *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (1st Dep't

19

2015); *Leffler v. Kotick*, 187 A.D.3d 543, 543 (1st Dep't 2020). Stated differently, "[i]f an allegedly defamatory statement is 'substantially true,' a claim of libel is legally insufficient and should [be] dismissed." *Franklin*, 135 A.D.3d at 94.

This defamation law doctrine, known as "substantial truth," protects publishers by ensuring that defamation liability is not premised on a "slight inaccuracy in the details" of a statement. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516-17 (1991); *Shulman v. Hunderfund*, 12 N.Y.3d 143, 150 (2009). But it is axiomatic that for a statement to be substantially true—and therefore not "false" for defamation-law purposes—its "overall gist or substance" must be true. *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014).

As the district court recognized below, courts in New York have often explained "substantial truth" by stating that "'[a] statement is substantially true if [it] would not have a different effect on the mind of the reader from that which the pleaded truth would have produced'" or if it "'could have produced no worse an effect on the mind of a reader than the truth pertinent to the allegation.'" (A48-49 (quoting *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017), and *Franklin*, 135 A.D.3d at 94).) But those decisions, which cite to and derive from the New York Court of Appeals' decision in *Fleckenstein v. Friedman*, 266 N.Y. 19 (1934), make clear that the substantial truth inquiry focuses on whether the challenged statement conveys substantially the same facts as the truth.

20

As the New York Court of Appeals explained in *Fleckenstein*, "[a] workable test [for substantial truth] is whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced," ***because "'[w]hen the <u>truth is so near to the facts as published</u>*** that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done.'"  *Fleckenstein*, 266 N.Y. at 23 (quoting *Cafferty v. Southern Tier Publ'g Co.*, 226 N.Y. 87, 93 (1919)).  Modern New York caselaw is fully in accord:

> While "minor inaccuracies" do not give rise to defamation, a statement is substantially true, and thus not actionable, if it would have the same effect "on the mind of the reader" as the "pleaded truth."  In other words, "[w]hen the truth is so near to the facts as published that fine and shaded distinctions must be drawn ... to sustain a charge of libel, no legal harm has been done."

*Goldman v. Reddington*, 417 F. Supp. 3d 163, 171 (E.D.N.Y. 2019) (alterations in original; citations omitted); *Agbimson v. Handy*, No. 17-cv-9252, 2019 WL 3817207, at *4 (S.D.N.Y. Aug. 14, 2019).  Or, stated similarly:

> A statement is substantially true if the statement would not "have a different effect on the mind of the reader from that which the pleaded truth would have produced."  In other words, "it is not necessary to demonstrate complete accuracy to defeat a charge of libel.  It is only necessary that the gist or substance of the challenged statements be true."

*Edward B. Beharry & Co. v. Bedessee Imports Inc.*, No. 09-cv-77, 2010 WL 1223590, at *6 (E.D.N.Y. Mar. 23, 2010) (citations omitted); *accord Graterol-*

21

*Garrido v. Vega*, No. 20-cv-4209, 2021 WL 1541455, at *2 (S.D.N.Y. Apr. 20, 2021) (similar); *Alpha Recycling, Inc. v. Crosby*, No. 14-cv-5015, 2016 WL 1178774, at *8 (S.D.N.Y. Mar. 23, 2016) (similar); *Lopez v. Univision Commc'ns, Inc.*, 45 F. Supp. 2d 348, 358-59 (S.D.N.Y. 1999) (similar). Ultimately, the substantial truth inquiry is exactly what its name suggests: Is the *substance* of a given statement—as opposed to minor and immaterial details in the statement—*true*?

Thus, for example, a report "that mistakenly says that the plaintiff stabbed a man *in* Cheyenne, Wyoming when he really stabbed a man *from* Cheyenne, Wyoming" would be substantially true because the misconduct alleged—that the plaintiff stabbed a person—was correctly reported; only a minor detail was incorrectly stated. *Bustos v. A & E Television Networks*, 646 F.3d 762, 764, 767 (10th Cir. 2011) (Gorsuch, J.). But accusing a person of shoplifting when he in fact committed treason would be actionable—even though shoplifting is a much less serious offense than treason—because the gist or substance of the defamatory allegation is different from the truth. *See Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1568 (D.C. Cir. 1984) (Scalia, J.). As a leading defamation treatise explains, the key distinction is:

> between (1) inaccuracies that amount to charges of an act of misconduct different from the one plaintiff actually engaged in, and (2) cosmetic inaccuracies that correctly identify the act but err in describing minor details concerning the act.

1 Rodney Smolla, Law of Defamation §5:20 (2d ed. 2022).  The relevant question, again, is whether the substance or gist of the statement aligns with the truth.  *E.g.*, *Dibble v. WROC TV Channel 8*, 142 A.D.2d 966, 967 (4th Dep't 1988) (statements that plaintiff was "indicted on charges of fraud, embezzlement and securities violations" and "accused of misuse of clients' escrow accounts and stock fraud" were not substantially true where plaintiff had been indicted for grand larceny); *Mitre Sports Int'l Ltd. v. Home Box Off., Inc.*, No. 08-cv-9117, 2010 WL 1507792, at *2 (S.D.N.Y. Apr. 15, 2010) (accusation that plaintiff exploited child labor in India was not substantially true where plaintiff may have done so in China); *Rizvi v. N. Shore Hematology-Oncology Assocs., P.C.*, 69 Misc. 3d 1212, at *10 (Sup. Ct. 2020) (report labeling a preliminary injunction as "permanent" was not substantially true).

Under that test, Cabrera's and CNN's defamatory statement was plainly not "substantially true."  Cabrera told CNN's national television audience that Twitter had suspended Veritas for publishing and "promoting misinformation."  (A17-18, ¶39.)  But, in reality, Twitter had *not* suspended Veritas for publishing or promoting misinformation.  (A9, A14, A16, ¶¶5-6, 27, 31.)  Rather, as Cabrera and CNN reported just four days earlier, Twitter had suspended Veritas for a decidedly different reason: for publishing truthful but (supposedly) private information.  (*Id.*)  Cabrera thus accused Veritas of an act of misconduct (publishing false information),

when Veritas had in fact engaged in a completely different act (publishing truthful but (supposedly) private information).  Under a straightforward application of settled law, Cabrera's statement was thus not "substantially true," and the district court erred in holding otherwise.  *See, e.g.*, 1 Rodney Smolla, Law of Defamation §5:20; *Dibble*, 142 A.D.2d at 967; *Mitre Sports*, 2010 WL 1507792, at *2.

## B.    The District Court Fundamentally Misconstrued the Test for Determining "Substantial Truth"—By Improperly Adopting a Comparative-Harm Test.

The district court's opinion makes clear that in holding Cabrera's defamatory statement "substantially true," it fundamentally misconstrued the substantial truth inquiry.  Rather than comparing the "gist or substance" of Cabrera's statement to the true facts, the district court *compared the magnitude of harm* that it believed Veritas suffered from Cabrera's defamatory statement *to the magnitude of harm* it believed Veritas would have suffered if Cabrera had instead reported the truth—and held Cabrera's false statement substantially true because it believed those harms were equivalent:

> While Project Veritas asserts that CNN's statements implying that Project Veritas was banned from Twitter for spreading misinformation maligns its "journalistic integrity," the pleaded truth of being accused of violating a policy [Twitter's private information policy] *similarly maligns* a journalist's professional reputation. ***In essence, "substitute the true for the false and the damage to plaintiff's reputation would be no less."***

24

(A51.)  Although the court acknowledged that "there is some difference" in violating a policy against publishing misinformation versus violating a policy against publishing private information, it held that "the distinction is not enough to make the statement at issue actionable as both violations are ***similarly damaging to the journalist's reputation***."  (*Id.*)

In so holding, the district court adopted a comparative harm test for substantial truth that the law emphatically rejects.  "[T]he substantial truth doctrine is *not* concerned with harm, it is concerned with an essential element of the plaintiff's claim and dismisses the action [if] that element cannot be met. ... [T]he substantial truth doctrine is concerned with truth (regardless of harm)."  *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 394 (S.D.N.Y. 1998).  Indeed, it has long been the law that "[i]t is not a defense to a libel or slander that the plaintiff has been guilty of offenses other than those imputed to him, or of offenses of a similar character."  *Sun Printing & Publ'g Ass'n v. Schenck*, 98 F. 925, 926 (2d Cir. 1900).  Thus, as explained in the Restatement (Second) of Torts, it is "the truth or falsity of the particular charge that is to be determined.  It is not enough that the accused person is found to have engaged in some other substantially different kind of misconduct even though it is equally or more reprehensible."  Restatement (Second) of Torts §581A cmt. f; *see also* 8A Stuart M. Speiser et al., *Am. Law of Torts* §29:86 (describing §581A and explaining that "[m]odern case law is in accord with the Restatement");

25

William Prosser & Robert Keeton, *The Law of Torts* 841 (5th ed. 1984) ("If the accusation is one of particular misconduct[,] it is not enough to show a different offense, even though it be a more serious one.").[16]

The decision in *Mitre Sports International Ltd. v. Home Box Office, Inc.*, No. 08-cv-9117, 2010 WL 1507792 (S.D.N.Y. Apr. 15, 2010), illustrates this principle. There, the plaintiff sued HBO for defamation for asserting in a report on child labor in India that it used Indian child labor to manufacture soccer balls. *Id.* at *1. HBO responded that its report was substantially true because, even though the plaintiff did not employ child labor in India, it (supposedly) did so in China. *See id.* at *1-2. But the court rejected HBO's substantial truth defense, explaining that "HBO's interpretation of the substantial truth defense is too broad": "Given that the segment focused exclusively on conditions in India and Pakistan, the nature of

---

[16] *See also, e.g.*, *Wallace v. Media News Grp., Inc.*, 568 F. App'x 121, 126 (3d Cir. 2014) (accusation that plaintiff was charged with murdering police informant and dumping body in woods not substantially true even though plaintiff was charged with murdering mother because of differences in the two murders: "[A]s grave as the charges against [plaintiff] are, [plaintiff's] complaint suggests that reasonable members of the public could reach materially different conclusions about such things as his culpability and danger to society at large if they believe that he has been charged with committing the different (and additional) murder attributed to [another person]. For that reason, we decline to treat these two alleged murders as interchangeable for reputational purposes at the pleading stage."); *Hawkins v. Mercy Health Servs., Inc.*, 583 N.W.2d 725, 735 (Mich. Ct. App. 1998) ("Certainly, it is no defense to liability for defamation based on false implication that the plaintiff has committed other, substantially unrelated, misconduct. That one has made a mistake, or even committed intentional wrongdoing, in one context does not justify a false implication about the person in another context.").

26

plaintiff's operations in China, if any, cannot render the segment's depictions of alleged conditions in India substantially true." *Id.* at *2. Plainly, accusing the plaintiff of exploiting child labor in India was no more harmful to the plaintiff than accusing it of exploiting child labor in China. *Id.* But the court held that even if the plaintiff used child labor in China, evidence of that fact would not make HBO's allegations substantially true because the location of the misconduct was material to HBO's report. *Id.* There can be no clearer illustration that substantial truth cannot turn on a comparative-harm test.

Notably, even the very caselaw that the district court relied upon for its comparative harm analysis confirms the court's error. As support for the proposition that a statement is substantially true as long as one can "'substitute the true for the false and the damage to plaintiff's reputation would be no less'" (A51 (alterations omitted)), the court quoted *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993). But the court overlooked the *Haynes* court's express holding that for a statement to be substantially true it must hew closely to the true facts: *"The true damaging facts must be closely related to the false ones." Id.*[17] Otherwise, the

_____

[17] The district court also cited *Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 247 (2014), as supposedly justifying its comparative harm test under federal law. But *Air Wisconsin* (a non-defamation case) did not even purport to do so, and in fact made clear that a statement can only be substantially true if "'the substance, the gist, the sting, of the libelous charge'" is true. *Id.* (citing *Masson*, 501 U.S. at 517).

*Haynes* court warned, a defendant could "bring[] to light every discreditable act that the plaintiff may have committed, in an effort to show that he is as 'bad' as the defamatory statements depict him." *Id.* "This would strip people who had done bad things of any legal protection against being defamed; they would be defamation outlaws." *Id.* And in a decision shortly after *Haynes* (written by the Judge who authored *Haynes*), the Seventh Circuit further explained the error of the comparative-harm approach to substantial truth that the district court undertook here:

> A sexual deviant might have a worse reputation than an embezzler, but it would not be a defense to a charge of falsely accusing a person of being an embezzler that while he is not an embezzler, he is a sexual deviant, and that is worse. Such a rule "would strip people who had done bad things of any legal protection against being defamed; they would be defamation outlaws."

*Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1350 (7th Cir. 1995) (Posner, J.) (quoting *Haynes*, 8 F.3d at 1228).

In addition, the district court's approach to substantial truth calls on judges to decide cases based on arbitrary assessments about which of two competing allegations is "worse." As then-Judge Gorsuch put it, an approach like the district court's:

> asks courts to compare harms flowing from statements on radically different matters that may even be incommensurable—which is worse, a perjurer or an inside trader? a liar or a cheat? By contrast, the material falsehood analysis focuses judicial attention on the comparatively narrow question whether the *particular* challenged statement is true or false on its *own terms*—a task that falls well within the traditional (if human and imperfect) truth-finding function of juries and judges.

28

*Bustos*, 646 F.3d at 766 (emphasis in original). The arbitrariness of such an inquiry illustrates yet another reason the district court's approach below cannot be—and is not—the law.

In eschewing the proper test for substantial truth in favor of a comparative-harm test that the law rejects, the district court fundamentally and reversibly erred.[18] As explained above, under the correct framework, Cabrera's statement is unquestionably *not* substantially true.

>    **C.    Veritas Satisfied Even the District Court's Improper Comparative Harm Test for Substantial Truth—But the District Court Ignored Veritas' Well-Pled Facts and Found Facts Outside the Pleadings in Holding Otherwise.**

Even if the district court's comparative harm test for determining substantial truth were correct (it is not), the court still erred in holding Cabrera's defamatory statement substantially true, because the harm caused by accusing a journalistic organization like Veritas of publishing and "promoting misinformation" is substantially greater than any harm from stating that it published truthful but private

---

[18] By failing to consider whether the "gist or substance" of Cabrera's defamatory statement was true and instead comparing the relative harms of that statement and the truth, the district court appears to have confused the "conceptually distinct" doctrines of "substantial truth" and "incremental harm." *See Jewell*, 23 F. Supp. 2d at 393-94. But New York's highest court has never adopted or applied the "incremental harm doctrine," *Friedman v. Rice*, 5 N.Y.S.3d 816, 826 n.7 (Sup. Ct. 2015), courts that have applied it have cautioned that it "is to be sparingly applied, if at all," *Stern v. Cosby*, 645 F. Supp. 2d 258, 286-87 (S.D.N.Y. 2009), and no party raised, briefed, or argued the incremental harm doctrine below.

information—as confirmed by Veritas' well-pled facts, substantial caselaw, and leading authorities.

As an initial matter, New York courts have repeatedly admonished that determining the gravity of damage caused by a defamatory statement "is peculiarly within the jury's province"—in other words, it is a question of fact. *E.g.*, *Toomey v. Farley*, 2 N.Y.2d 71, 83 (1956); *Yammine v. DeVita*, 43 A.D.3d 520, 521 (3d Dep't 2007); *Calhoun v. Cooper*, 206 A.D.2d 497, 497 (2d Dep't 1994). And Veritas pled in its Complaint that, unlike a statement that it published truthful but private information—which does not impugn its journalistic integrity—the accusation that it published and "promot[ed] misinformation" does exactly that, thereby imputing to Veritas conduct "incompatible with" and "disqualification to fulfill" its business, trade, or profession "as an investigative journalism organization." (A7-8, A22-23, ¶¶2, 58-59.) Veritas further pled facts demonstrating *why* that is the case: Unlike a statement that it published truthful information that someone may consider private, an allegation that it published or promoted misinformation "lower[s] the credibility of its reporting." (*Id.*) The district court ignored these well-pled facts, and in doing so it reversibly erred.

But even had the district court been within its authority to resolve at the motion-to-dismiss stage the question whether accusing a journalistic organization of publishing truthful but (supposedly) private information is as harmful as accusing it

30

of publishing and "promoting misinformation" (the court lacks that authority), the court reversibly erred in finding the harm caused by those two statements to be comparable—especially as a matter of law. Courts in New York and around the country have repeatedly recognized the paramount importance of credibility to a journalistic organization. As the Second Circuit explained in holding it libelous to falsely accuse a journalist of dishonesty, "any journalist, commentator or analyst is entitled not to be lightly characterized as inaccurate and dishonest or libelous. We cannot disagree with the finding of the court below that it is 'crucial' to such a person's career that he or she not be so treated." *Buckley v. Littell*, 539 F.2d 882, 896-97 (2d Cir. 1976); *see also, e.g.*, *Newspaper Guild v. NLRB*, 636 F.2d 550, 560 (D.C. Cir. 1980) ("In a very real sense, [editorial integrity] is to a newspaper or magazine what machinery is to a manufacturer. At least with respect to most news publications, credibility is central to their ultimate product and to the conduct of the enterprise."); *Manson v. Little Rock Newspapers, Inc.*, 42 F. Supp. 2d 856, 866 (E.D. Ark. 1999), *aff'd*, 200 F.3d 1172 (8th Cir. 2000) ("'Editorial integrity and credibility are core objectives of editorial control[.]'" (quoting *Nelson v. McClatchy Newspapers, Inc.*, 936 P.2d 1123, 1131 (Wash. 1997))).

Leading journalism texts and scholarship likewise emphasize the critical importance of credibility and integrity to journalists. As a foundational journalism text explains, "[t]he desire that information be truthful is elemental. Since news is

31

the material that people use to learn and think about the world beyond themselves, the most important quality it can possess is that it be usable and reliable." Bill Kovach & Tom Rosenstiel, *The Elements of Journalism* 45 (4th ed. 2021); *see also, e.g.*, Clay Calvert, *The First Amendment, Journalism & Credibility: A Trio of Reforms for a Meaningful Free Press More Than Three Decades After* Tornillo, 4 First Amend. L. Rev. 9, 17 (2005) ("[C]redibility is more than just a journalistic goal.... Press credibility is a central, if not critical, rationale for the constitutional protection of a free press."); Matthew C. Ehrlich, *Hollywood and Journalistic Truthtelling*, 19 Notre Dame J.L. Ethics & Pub. Pol'y 519, 519 (2005) (recognizing "truthtelling" as "the paramount principle of journalism"); Am. Press Inst., *Journalism as a Discipline of Verification* ("Journalists often describe the essence of their work as finding and presenting 'the facts' and also 'the truth about the facts.'").[19]

Codes of conduct and the mission statements of major media outlets across the country likewise emphasize the paramount importance of credibility and integrity to journalistic organizations. For example:

---

[19] https://www.americanpressinstitute.org/journalism-essentials/verification-accuracy/journalism-discipline-verification (last visited June 20, 2022).

- **The L.A. Times:** "Credibility, a news organization's most precious asset, is arduously acquired and easily squandered."[20]

- **The Washington Post:** "The first mission of a newspaper is to tell the truth as nearly as the truth may be ascertained."[21]

- **The Chicago Tribune:** "If [readers] have reason to doubt the credibility of our work, quality won't matter—they will go elsewhere. That is especially important in the increasingly competitive multimedia world."[22]

- **The N.Y. Times:** "[K]nowingly or recklessly provid[ing] false information for publication betray[s] our fundamental pact with our readers."[23] "At a time of growing and even justified public suspicion about the impartiality, accuracy and integrity of some journalists and some journalism, it is imperative that The Times and its staff maintain the highest possible standards to insure that we do nothing that might erode readers' faith and confidence in our news columns."[24]

And tellingly, CNN itself has admitted the paramount importance of credibility and integrity to the journalistic enterprise. As the California Supreme Court observed in another case against CNN, "CNN presented evidence tending to show that its ability to participate meaningfully in public discourse on [matters of

---

[20] L.A. Times, *Ethics Guidelines*, https://www.latimes.com/la-times-ethics-guidelines-story.html (last visited June 20, 2022).

[21] Wash. Post, *About the Post*, https://www.washingtonpost.com/about-the-post/ (last visited June 20, 2022).

[22] Chicago Tribune, *Tribune Code of Editorial Principles*, http://www.trbas.com/media/media/acrobat/2017-04/70017931280960-25200546.pdf (last visited June 20, 2022)

[23] N.Y. Times, *Ethical Journalism*, https://www.nytimes.com/editorial-standards/ethical-journalism.html# (last visited June 20, 2022).

[24] N.Y. Times, *Guidelines on Integrity*, https://www.nytimes.com/editorial-standards/guidelines-on-integrity.html (last visited June 20, 2022).

public interest] depends on its integrity and credibility." *Wilson v. Cable News Network, Inc.*, 444 P.3d 706, 722 (Cal. 2019).

This is powerful evidence that Cabrera's accusation that Veritas published and "promot[ed] misinformation" is more damaging to Veritas than a true statement that Veritas published truthful but (supposedly) private information would have been. And it is powerful evidence that the district court's *ipse dixit* holding to the contrary as a matter of law was erroneous, especially at the motion-to-dismiss stage—even if the court's comparative harm analysis were proper (and it is not).

## II. Veritas' Complaint More Than Sufficiently Pled Actual Malice.

Because the district court granted CNN's motion to dismiss on the ground of substantial truth, it did not address CNN's argument that Veritas failed to plausibly allege actual malice (A54-55)—the only other ground on which CNN moved to dismiss. (DE 20-1 at 22-23.) But because this Court may affirm on any ground supported by the record, *Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 852 (11th Cir. 2022), Veritas briefly explains here how it more than sufficiently pled actual malice.

Although Veritas bears the burden of pleading that Cabrera made her false statement with actual malice—*i.e.*, with knowledge that it was false or with reckless disregard for its truth or falsity, *N.Y. Times v. Sullivan*, 376 U.S. 254, 279-80 (1964)—that is not a prohibitively-high hurdle, especially at the pleadings stage:

a plaintiff need only proffer facts giving rise to a "plausible inference" of actual malice. *Palin v. N.Y. Times Co.*, 940 F.3d 804, 814-15 (2d Cir. 2019). Moreover, because defamation-defendants, unsurprisingly, "are prone to assert their good-faith belief in the truth of their publications" such that "plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself," *Herbert v. Lando*, 441 U.S. 153, 170 (1979), "a plaintiff is entitled to prove the defendant's state of mind through" either direct *or* "circumstantial evidence." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *see also Celle v. Filipino Rep. Enters.*, 209 F.3d 163, 183 (2d Cir. 2000); *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987). In addition, the Supreme Court has admonished that because "proof of 'actual malice' calls a defendant's state of mind into question," where lack of fault is not clear, this element "does *not* readily lend itself to summary disposition." *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979) (citing 10B Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* §2730); *see also OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 49 (D.D.C. 2005) ("[T]he question of actual malice is ordinarily one for the jury[.]"); *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1042 (9th Cir. 1998) ("statements of [] subjective intention are matters of credibility for a jury").

Here, Veritas pled facts constituting both direct *and* circumstantial evidence of Cabrera's (and CNN's) actual malice.

### A.    Veritas Pled Facts Constituting Direct Evidence of Actual Malice.

Veritas pled more than sufficient facts constituting direct evidence of Cabrera's (and CNN's) actual malice in publishing their false statement that Twitter suspended Veritas for publishing and "promoting misinformation."  In fact, Veritas pled that Cabrera (and CNN) had actual knowledge that their statement was false, as evidenced by the fact that on February 11, 2021—just four days before making their false statement on February 15, 2021—Cabrera tweeted and CNN reported that Twitter had suspended Veritas for "violations of Twitter's policies prohibiting the sharing—or threats of sharing—of other people's private information without consent." (A7-9, A16-17, ¶¶2, 6, 31, 37.)[25]  In other words, at the time Cabrera (and CNN) falsely told a national television audience that Twitter had suspended Veritas for publishing and "promoting misinformation," they had actual knowledge that Twitter had actually suspended Veritas for publishing *truthful* but (supposedly) private information—*not* for publishing or promoting "misinformation."  That is actual knowledge of falsity, full stop.

---

[25]  Ana Cabrera (@AnaCabrera), Twitter (Feb. 11, 2021, 4:27pm), https://twitter.com/anacabrera/status/1359977301312761857 (cited at A9, A17 ¶¶6, 37); Brian Fung, *Twitter Permanently Bans Project Veritas Account*, CNN (Feb. 11, 2021), https://www.cnn.com/2021/02/11/tech/twitter-project-veritas/index.html (cited at A9, A16, ¶¶6, 31).

Moreover, even if Cabrera's prior tweet and CNN's prior report did not demonstrate Cabrera's and CNN's actual knowledge that their defamatory statement was false (it does), it unquestionably demonstrates their reckless disregard for the truth. Indeed, courts have repeatedly held that such facts give rise to a plausible inference of actual malice. *E.g.*, *Palin*, 940 F.3d at 814-15 (actual malice plausibly pled where speaker previously reviewed and edited articles contradicting his false statements); *Lemelson v. Bloomberg, L.P.*, 903 F.3d 19, 25 (1st Cir. 2018) ("[A]ctual malice can be shown where the publisher is in possession of information that seriously undermines the truth of its story."); *Golden Bear Distrib. Sys. of Tex., Inc. v. Chase Revel, Inc.*, 708 F.2d 944, 950 (5th Cir. 1983) (upholding defamation verdict for plaintiff when defendant-reporter's notes showed awareness of facts contradicting her story); *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 874 (W.D. Va. 2016) (similar).

### B.    Veritas Pled Facts Constituting Circumstantial Evidence of Actual Malice.

Veritas further pled substantial facts constituting well-recognized circumstantial evidence of actual malice. Notably, in evaluating the sufficiency of such circumstantial evidence—or, here, factual allegations—courts must take a holistic approach that examines the totality of the allegations to determine whether, collectively, they are capable of giving rise to an inference of knowledge of falsity or reckless disregard for the truth. *Celle*, 209 F.3d at 183. "'There is no doubt that

37

evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity.'" *Id.* (quoting *Goldwater v. Ginzburg*, 414 F.2d 324, 342 (2d Cir. 1969)). Thus, for example, although bias or ill will may not *alone* be sufficient to demonstrate actual malice, "evidence concerning motive" or bias **is** a relevant evidentiary building block toward proving actual malice. *Connaughton*, 491 U.S. at 668; *Celle*, 209 F.3d at 183. Similarly, although a failure to properly investigate may not *alone* prove actual malice, it *is* one piece of evidence that can support a finding of actual malice. *E.g.*, *Hunt v. Liberty Lobby*, 720 F.2d 631, 645 (11th Cir. 1983); *Vandenburg v. Newsweek, Inc.*, 441 F.2d 378, 380 (5th Cir. 1971).

**Preconceived Storyline and Avoidance of Contradictory Information.**
A jury can find actual malice based on "a predetermined and preconceived plan to malign [the plaintiff's] character." *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir. 1969); *accord Palin*, 940 F.3d at 813 (holding actual malice properly pled where plaintiff's "overarching theory of actual malice [was that [defendant] had a 'pre-determined' argument he wanted to make" and ignored evidence contradicting it). Indeed, "'evidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite

powerful evidence.'" *Harris v. City of Seattle*, 152 F. App'x 565, 568 (9th Cir. 2005) (quoting 1 Rodney A. Smolla, Law of Defamation §3:71 (2d ed. 2022)); *accord Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 539 (7th Cir. 1982) (finding actual malice because, *inter alia*, defendant "conceived of a storyline" and then published a defamatory article consistent with it); *Sharon v. Time*, *Inc.*, 599 F. Supp. 538, 576 (S.D.N.Y. 1984) (similar).

Veritas pled that Cabrera and CNN set out with a preconceived plan to malign and discredit Veritas by accusing it of publishing and promoting misinformation— and deliberately ignored compelling evidence that their accusation was false. (A13, A16-17, A21, ¶¶24, 35-36, 51.) Moreover, Veritas pled facts showing *why* Cabrera and CNN did so: to undermine Veritas' "regular" reporting about CNN that has "call[ed] into question the accuracy and integrity of CNN's reporting," and "show[n] significant bias in [CNN's] reporting." (A13, A16-17, A21, ¶¶24, 35-36, 51.) And cementing the plausibility of those facts, Veritas pled that CNN has previously targeted Veritas because of its reporting on CNN, even baselessly threatening Veritas with felony prosecution. (A21, ¶51.)

**Bias, Motive, Ill Will, and CNN's Previous Interactions with Veritas.**

"[E]vidence concerning motive," bias, "animosity," and ill will "support a finding

of actual malice." *Connaughton*, 491 U.S. at 668; *Celle*, 209 F.3d at 183, 186, 189.[26]

Moreover, actual malice can be inferred from "the nature and circumstances of the alleged defamation or previous dealings with the defendant." *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015). Veritas pled that in response to Veritas' exposés on CNN that uncovered and reported journalistic malfeasance at the network, CNN has repeatedly threatened Veritas (including with baseless threats of felony prosecution), holds substantial animus against it, and was driven by ill will to defame Veritas. (A13, A16-17, A21, ¶¶24, 35-36, 51.)

**Failure to Comply With Journalistic Standards.** A journalist's failure to comply "with the standards of [the] profession in information gathering and dissemination" further constitutes circumstantial evidence of actual malice. *Kerwick v. Orange Cnty. Publ'ns Div. of Ottaway Newspapers, Inc.*, 53 N.Y.2d 625, 627 (1981); *Connaughton*, 491 U.S. at 693. Veritas pled that Cabrera and CNN failed to comply with basic journalistic standards, as demonstrated by the fact that even the most basic inquiry regarding the reason for Veritas' Twitter suspension would have confirmed that Twitter had suspended Veritas for publishing truthful but (supposedly) private information, not for anything remotely having to do with

---

[26] *See also, e.g.*, *Shoen v. Shoen*, 48 F.3d 412, 417 (9th Cir. 1995) ("[I]ll will *is* considered circumstantial evidence of actual malice."); *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 315 n.10 (5th Cir. 1995) ("[E]vidence of ulterior motive can often bolster an inference of actual malice.").

publishing misinformation. (A22, ¶54.) Indeed, Cabrera and CNN need not have looked any farther than their own tweets and reporting from just four days earlier to confirm that. (A7-9, A16-17, ¶¶2, 6, 31, 37.)

**Refusal To Retract/Apologize.** "[A] refusal to retract" constitutes "evidence of actual malice." *Schafer v. Time, Inc.*, 142 F.3d 1361, 1370 n.8 (11th Cir. 1998) (observing that "a number of courts" have so held); *Morgan v. Dun & Bradstreet, Inc.*, 421 F.2d 1241, 1243 (5th Cir. 1970) ("[T]he refusal of the defendant to retract or to issue a corrected report on request is likewise evidence of [actual] malice."); *Tavoulareas v. Piro*, 763 F.2d 1472, 1477 (D.C. Cir. 1985) ("Evidence of the [defendant's] steadfast refusal to retract [is] properly considered as bearing on the issue of actual malice." (citing Restatement (Second) of Torts §580A cmt. d)); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987); *Ventura v. Kyle*, 63 F. Supp. 3d 1001, 1014 (D. Minn. 2014) ("most authorities" so hold), *rev'd on other grounds*, 825 F.3d 876 (8th Cir. 2016).

Veritas asked CNN and Cabrera to retract their false statement that Veritas was suspended from Twitter for publishing misinformation and even explained the falsity of their statement, but CNN and Cabrera expressly refused to retract it. (A11, A19-20, ¶¶12, 45-46.) Indeed, CNN and Cabrera, in refusing to retract their statement, did not even contend that it was true, but rather refused to retract only because they believed they could argue that it was not "defamation *per se*." (A19-

41

20, ¶¶45-46.)  Stated differently, CNN and Cabrera refused to retract their statement not because they believed it is true, but because they believed they could get away with saying it either because it is not defamatory *per se* (it is),[27] or because Veritas could not prove, as a matter of fact, that it was damaged by CNN's statement (it was).[28]  In other words, Cabrera and CNN made their decision not to retract based on their perception of legal risk, not journalistic ethics, which impose an "ethical responsibility to correct all its factual errors, large and small" and require that "[i]f a correction is warranted, fairness demands that it be published immediately."  N.Y. Times, *Guidelines on Integrity*.  That, too, is evidence of actual malice.  *See Kerwick*, 53 N.Y.2d at 627; *Connaughton*, 491 U.S. at 693.

***

These well-pled facts, especially in combination, more than sufficiently raise a plausible inference of actual malice.

## CONCLUSION

For the foregoing reasons, Veritas respectfully requests that the Court reverse the district court's judgment dismissing its defamation claim against CNN and

---

[27] *See John Langenbacher Co. v. Tolksdorf*, 199 A.D.2d 64, 65 (1st Dep't 1993) (statements that "impugn[] the basic integrity ... [or] competence of [a] business" are defamatory *per se*); *Celle*, 209 F.3d at 180 (same).

[28] A19, A22, ¶¶44, 55-58; *see also Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*, --- F. Supp. 3d ----, 2021 WL 5909976, at *20 (S.D.N.Y. 2021) (if statement is not defamatory *per se*, plaintiff must prove damages).

remand this case to the district court with instructions that the parties proceed to discovery.

Date:  June 22, 2022

Respectfully Submitted,

  /s/ Elizabeth M. Locke, P.C.

HARMEET K. DHILLON
MATTHEW S. SARELSON
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
(415) 433-1700

ELIZABETH M. LOCKE, P.C.
  Counsel of Record
JOSEPH R. OLIVERI
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7400
libby@clarelocke.com

Attorneys for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

**1.    Type Volume**

[X]    This document complies with type-volume limits of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f) (cover page, corporate disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, proof of service, attachments), this document contains 9,935 words.

**2.    Typeface and Type-Style**

[X]    This document complies with the typeface requirements of FRAP 32(a)(5)(A) and the type-style requirements of FRAP 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


  /s/ Joseph. R. Oliveri
Joseph. R. Oliveri
*Attorney for Plaintiff-Appellant Project Veritas*

Dated:  June 22, 2022

44

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this Principal Brief of Plaintiff-Appellant Project Veritas was filed with the Clerk of the Court using the Court's CM/ECF system on June 22, 2022, which will send notification of such filing to counsel for all parties.  I further certify that all participants in this case are registered CM/ECF users.


Dated:  June 22, 2022                 By:     */s/ Elizabeth M. Locke, P.C*
                                                      Elizabeth M. Locke, P.C.