No. 22-11270-BB

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

PROJECT VERITAS,
*Appellant*,

v.

CABLE NEWS NETWORK, INC.,
*Appellee*.

---

On Appeal for the United States District Court
for the Northern District of Georgia, Atlanta Division
Case No. 1:21-cv-01722-SCJ

---

## BRIEF OF APPELLEE
## CABLE NEWS NETWORK, INC.

---

BRYAN CAVE LEIGHTON PAISNER LLP

Eric P. Schroeder
Brian M. Underwood, Jr.
One Atlantic Center, 14th Floor
1201 West Peachtree Street, NW
Atlanta, Georgia 30309
Telephone:  404-572-6600
Facsimile:   404-572-6999
eric.schroeder@bclplaw.com
brian.underwood@bclplaw.com

*Attorneys for Cable News Network, Inc.*

*Project Veritas v. Cable News Network, Inc.*, Case No. 22-11270

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rules 26.1 and 28(a)(1) of the Federal Rules of Appellate Procedure and 11th Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellee Cable News Network, Inc., by and through undersigned counsel, hereby certify that the following is a full and complete list of the trial judges and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

1. Baughman, Krista L., Esq.

2. Bryan Cave Leighton Paisner LLP

3. Cable News Network, Inc.

4. Chalmers & Adams, LLC

5. Chalmers, Jr., Douglas A. S., Esq.

6. Clare Locke LLP

7. Coleman, Ronald David, Esq.

8. Dhillon, Harmeet, Esq.

9. Dhillon Law Group Inc.

10. Historic TW Inc.

*Project Veritas v. Cable News Network, Inc.*, Case No. 22-11270

11.    Jones, Hon. Steven C., United States District Court
       Judge for the Northern District of Georgia

12.    Locke, Elizabeth M., Esq.

13.    Project Veritas

14.    Project Veritas Action

15.    Sarelson, Matthew S., Esq.

16.    Schroeder, Eric P., Esq.

17.    Sweigart, Karin M., Esq.

18.    Underwood, Jr., Brian M., Esq.

19.    Wagner, Heather Lynn, Esq.

20.    Warner Bros. Discovery, Inc. (NASDAQ: WBD)

21.    Warner Media, LLC

22.    WarnerMedia Holdings, Inc.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Cable News Network, Inc. ("CNN") submits that oral argument is not necessary in this appeal. The appeal raises no novel issues of law, the briefs and record on appeal adequately present the material facts and legal arguments, and oral argument would not meaningfully aid the decisional process.

## <u>TABLE OF CONTENTS</u>

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

    DISCLOSURE STATEMENT......................................................................1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CITATIONS .......................................................................................v

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUES.............................................................................2

STATEMENT OF THE CASE................................................................................3

SUMMARY OF THE ARGUMENT ....................................................................12

ARGUMENT AND CITATIONS OF AUTHORITY ...........................................15

I.      Legal Standard. ..........................................................................................15

II.    PV's Claim Does Not Depend Upon Any Specific False Statement Of

       Fact From The Face Of The Commentary. ..................................................16

III.   PV's Failure To Address The District Court's Ruling On Material

       Falsity Is Fatal.............................................................................................18

IV.   PV's Primary Basis For Reversal Fails Because The District Court

       Did Not Apply A Libel-Proof Or Incremental Harm Analysis. ...................20

       A.     The District Court Did Not Employ A Libel-Proof Analysis. ............20

B.    The District Court Did Not Apply An Incremental Harm

Analysis. ...........................................................................22

V.    The Court Properly Dismissed PV's Complaint On Material Falsity

Grounds..................................................................................26

A.    History And Nature Of The Material Falsity Requirement. ...............26

B.    The CNN Commentary Is Not Materially False. ................................31

VI.   The Court Also Properly Dismissed PV's Complaint On Substantial

Truth Grounds........................................................................34

A.    The District Court Correctly Dismissed On Substantial Truth

Grounds. ..........................................................................34

1.    New York Law For Substantial Truth. .....................................34

2.    The Commentary Is Substantially True. ...................................36

B.    PV's Arguments For Reversal Are Unsupportable............................39

VII.  The Court May Affirm On The Independent Ground That PV Has Not

Plausibly Pleaded A Defamation By Implication Claim. ..............................43

VIII. The Court May Affirm Because PV Did Not Plausibly Allege Actual

Malice. .................................................................................45

A.    The Plausibility Standard For Pleading Actual Malice.......................45

B.    The Complaint Does Not Plausibly Allege Facts Showing CNN
Acted With Actual Malice In Allegedly Implying PV Violated
Twitter's Authenticity Policy. ...........................................................48

C.    The Complaint Does Not Plausibly Plead Actual Malice
Generally. ...........................................................................................50

1.    There Is No Plausible Circumstantial Evidence Of Actual
Malice.......................................................................................50

2.    The "Tweet" Is Not Direct Evidence of Actual Malice............53

CONCLUSION ........................................................................................................55

# TABLE OF CITATIONS

Page(s)

## Cases

*600 W. 115th St. Corp. v. Von Gutfeld*,

603 N.E.2d 930 (N.Y. 1992) ...............................................................15

\* *Air Wisconsin Airlines Corp. v. Hoeper*,

571 U.S. 237 (2014) ...................................................................... passim

*Armstrong v. Simon & Schuster, Inc.*,

649 N.E.2d 825 (1995) .............................................................. 15, 43

*Aronson v. Wiersma*,

65 N.Y.2d 592 (1985) ..........................................................................16

*Berisha v. Lawson*,

973 F.3d 1304 (11th Cir. 2020) ................................................... 52, 53

*Biro v. Condé Nast*,

883 F. Supp. 2d 441 (S.D.N.Y. 2012) ......................................... passim

*Bose Corp. v. Consumers Union of U.S., Inc.*,

466 U.S. 485 (1984) ............................................................................49

*Broker's Choice of Am., Inc. v. NBC Universal, Inc.*,

861 F.3d 1081 (10th Cir. 2017) ................................................ 27, 28, 30, 33

*Bustos v. A&E Television Networks*,

    646 F.3d 762 (10th Cir. 2011) ........................................................ passim

*Cabello-Rondón v. Dow Jones & Co.*,

    2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017) .....................................45

*Calhoun v. Cooper*,

    206 A.D.2d 497, 614 N.Y.S.2d 762 (N.Y. App. Div. 1994)................................42

*Chau v. Lewis*,

    771 F.3d 118 (2d Cir. 2014) ........................................................ 39, 40

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,

    6 F.4th 1247 (11th Cir. 2021) ........................................................ passim

*Cortes v. Twenty-First Century Fox America, Inc.*,

    285 F. Supp. 3d 629 (S.D.N.Y. 2018) .................................................53

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,

    551 F. Supp. 3d 320 (S.D.N.Y. 2021) ........................................................ 15, 38

*Desnick v. Am. Broad. Cos.*,

    44 F.3d 1345 (7th Cir. 1995) ...............................................................20

*Dodds v. American Broadcasting Co.*,

    145 F.3d 1053 (9th Cir. 1998) ...............................................................48

*Donald J. Trump for President, Inc. v. CNN Broad., Inc.*,

    500 F. Supp. 3d 1349 (N.D. Ga. 2020) .................................................46

*Dunn v. Air Line Pilots Ass'n*,

    193 F.3d 1185 ..................................................................................52

*Fairfax v. CBS Corporation*,

    2 F.4th 286 (4th Cir. 2021) ...............................................................52

*Franklin v. Daily Holdings, Inc.*,

    135 A.D.3d 87, 21 N.Y.S.3d 6 (N.Y. App. Div. 2015)........................... 25, 34, 36

*Garrison v. Louisiana*,

    379 U.S. 64 (1964) ..................................................................... 27, 46

*Gertz v. Robert Welch, Inc.*,

    418 U.S. 323 (1974) ........................................................................27

*Greer v. Carlson*,

    2020 WL 6064167 n.5 (S.D.N.Y. Oct. 14, 2020) .................................41

* *Guccione v. Hustler Mag., Inc.*,

    800 F.2d 298 (2d Cir. 1986) (applying New York law).............................. passim

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,

    491 U.S. 657 (1989) ................................................................. 46, 51, 52

*Haynes v. Alfred A. Knopf, Inc.*,

    8 F.3d 1222 (7th Cir. 1993) ........................................................ 30, 32

*Hosseinzadeh v. Klein*,

    276 F. Supp. 3d 34 (S.D.N.Y. 2017) ..................................................39

*Hunt v. Liberty Lobby*,

    720 F.2d 631 (11th Cir. 1983) ................................................................52

*Jacoby v. Cable News Network, Inc.*,

    2021 WL 5858569 (11th Cir. Dec. 10, 2021) ............................... 46, 49

*Jacoby v. Cable News Network, Inc.*,

    537 F. Supp. 3d 1303 (M.D. Fla. 2021) ...............................................48

*Jewell v. NYP Holdings, Inc.*,

    23 F. Supp. 2d 348 (S.D.N.Y. 1998) ........................................... passim

*Kendall v. Daily News Pub'g Co.*,

    716 F.3d 82 (3d Cir. 2013) ........................................................... 47, 48

*Klayman v. City Pages*,

    650 F. App'x. 744 (11th Cir. 2016)............................................... 47, 51

*Levan v. Capital Cities/ABC, Inc.*,

    190 F.3d 1230 (11th Cir. 1999) .................................................... 49, 53

*Liberty Lobby, Inc. v. Dow Jones & Co.*,

    838 F.2d 1287 (D.C. Cir. 1988).................................................... 30, 34

*Marrache v. Bacardi U.S.A., Inc.*,

    17 F.4th 1084 (11th Cir. 2021)...........................................................12

*Masson v. New Yorker Magazine, Inc.*,

    501 U.S. 496 (1991) ...........................................................................28

*Matovick v. Times Beacon Record Newspapers*,

    46 A.D.3d 636 (N.Y. App. Div. 2007) ................................................35

\* *Michel v. NYP Holdings, Inc.*,

    816 F.3d 686 (11th Cir. 2016) ....................................................... passim

*Milkovich v. Lorain Journal Co*.,

    497 U.S. 1 (1990) ....................................................................... 16, 17

*Mitre Sports International Ltd. v. Home Box Office, Inc.*,

    2010 WL 1507792 (S.D.N.Y. Apr. 15, 2010) ............................... 23, 24

*New York Times Co. v. Sullivan*,

    376 U.S. 254 (1964) .............................................................. 16, 26, 27

*Nichols v. Moore*,

    477 F.3d 396 (6th Cir. 2007) ................................................................22

*Palin v. New York Times Co.*,

    940 F.3d 804 (2d Cir. 2019) ................................................................15

*Parks v. LaFace Records*,

    329 F.3d 437 (6th Cir. 2003) ................................................................28

*Partington v. Bugliosi*,

    56 F.3d 1147 (9th Cir. 1995) ...............................................................39

*Phil. Newspapers, Inc. v. Hepps*,

    475 U.S, 767 (1986) ....................................................... 10, 27, 30, 34

*Pope v. Chronicle Pub. Co.*,

    95 F.3d 607 (7th Cir. 1996) ...................................................................29

*Printers II, Inc., v. Professionals Pub., Inc*.,

    784 F.2d 141 (2d Cir. 1986) ...................................................................35

*Project Veritas v. Leland Stanford Junior University*,

    2022 WL 1555047 (W.D. Wash. May 17, 2022) ...................................17

*Proskin v. Hearts Corp.*,

    14 A.D.3d 782, 787 N.Y.S.2d 506 (N.Y. App. Div. 2005)..................35

*Rinaldi v. Holt, Rinehart & Winston*,

    42 N.Y.2d 369 (N.Y. 1977)........................................................... 36, 39

*Rinsley v. Brandt*,

    700 F.2d 1304 (10th Cir. 1983) .................................................... 27, 28

*Saenz v. Playboy Enters., Inc.*,

    841 F.2d 1309 (7th Cir. 1988) ...............................................................47

\* *Sapuppo v. Allstate Floridian Ins. Co.*,

    739 F.3d 678 (11th Cir. 2014) .......................................... 18, 19, 20, 43

*Sharon v. Time, Inc*.,

    609 F. Supp. 1291 (S.D.N.Y. 1984) ....................................................36

*Stepanov v. Dow Jones & Co*.,

    120 A.D.3d 28, 987 N.Y.S.2d 37 (N.Y. App. Div. 2014)...................43

*Tannerite Sports, LLC v. NBCUniversal News Group*,

    864 F.3d 236 (2d Cir. 2017) ................................................................... 15, 34, 36

*Tavoulareas v. Piro,*

    817 F.2d 762 (D.C. Cir. 1987) (en banc ............................................................52

*Time, Inc. v. Pape*,

    401 U.S. 279 (1971) ............................................................................................54

*Tobinick v. Novella*,

    848 F.3d 935 (11th Cir. 2017) ...........................................................................46

*Toomey v. Farley*,

    2 N.Y.2d 71 (1956) ............................................................................................42

*Training Unlimited, Inc. v. Nat'l Broad Co., Inc.*,

    981 F. Supp. 112 (E.D.N.Y. 1997) ...................................................................34

\* *Turner v. Wells*,

    879 F.3d 1254 (11th Cir. 2018) ................................................................ passim

*U.S. v. Campbell*,

    26 F.4th 860 (11th Cir. 2022) (*en banc* ...........................................................19

*Vangheluwe v. Got News, LLC*,

    365 F. Supp. 3d 850 (E.D. Mich. 2019) ...........................................................41

*Verragio, Ltd. V. AE Jewelers, Inc*.,

    2017 WL 4125368 (S.D.N.Y. Aug. 23, 2017) ..................................................36

*Vinas v. Chubb Corp.*,

    499 F. Supp. 2d 427 (S.D.N.Y. 2007) ................................................................45

*Yammine v. DeVita*,

    43 A.D.3d 520, 840 N.Y.S.2d 652 (N.Y. App. Div. 2007)................................42

## **<u>Rules</u>**

11th Cir. R. 28-5 ..............................................................................................................3

Other Authorities

1 Rodney A. Smolla, *Law of Defamation*, § 5:17.50 (2d ed. 2022). ......................28

*Sack on Defamation: Libel, Slander and Related Problems*, § 2:4.18 (5th Ed. 2022)
    ..............................................................................................................................23

## **JURISDICTIONAL STATEMENT**

CNN adopts the Jurisdictional Statement in Appellant's Brief.

## **STATEMENT OF THE ISSUES**

I.      Should the dismissal be affirmed because PV does not address the District Court's alternative holding that the Commentary is not materially false as required by the First Amendment?

II.     Should the dismissal be affirmed because the Commentary is not actionable under the First Amendment as the Commentary is not materially false?

III.    Should the dismissal be affirmed because the Commentary is substantially true under New York law?

IV.    Should the dismissal be affirmed because the Complaint does not state a claim for defamation by implication under New York law?

V.     Should the dismissal be affirmed because the Complaint does not plausibly allege that CNN published the Commentary with the constitutionally-required actual malice?

## STATEMENT OF THE CASE

Project Veritas ("PV") offers an insubstantial, hyper-technical argument in an attempt to set out a theory of defamation, asserting CNN wrongly implied Twitter banned PV for violating a policy prohibiting misinformation instead of disclosing the technically correct reason: PV was banned because its misconduct endangered others. The District Court properly dismissed PV's claim, ruling the alleged falsity did not have a "different effect on the mind of the average reader in terms of reputational harm" than the truth. (A51.[1]) On appeal, PV argues that this Court should forbid assessments of the alleged falsity's reputational impact on a motion to dismiss and instead allow claims to proceed if plaintiffs assert a mere scintilla of falsity regardless of whether that falsity meaningfully affects the plaintiffs' reputations in the minds of average, reasonable viewers. Yet, that is not the law—not only under New York law for substantial truth, but also under well-established First Amendment jurisprudence for material falsity.

There is no dispute Twitter permanently banned PV in February 2021 for misconduct that endangered others, i.e., *repeated* violations of Twitter's policy

---

[1] Citations to PV's Appendix utilize the numbering format adopted by PV. "S.A." citations refer to the numbered documents in CNN's Supplemental Appendix. Page numbers for S.A. case documents are identified by headers generated by the District Court's electronic filing system. *See* 11th Cir. R. 28-5. Citations to PV's brief are to the page numbers in the footer of each page.  Citations to legal authorities omit internal citations and quotations, unless otherwise noted.

"prohibiting the sharing—or threats of sharing—of other people's private information" (i.e., "doxxing"). (*See* A14 at ¶ 27; A16-17 at ¶¶ 31, 37; S.A. 20-2 at 6-11.) Days later, CNN reported social media companies were "cracking down" on accounts that promoted "misinformation," citing Twitter's permanent suspension of PV as an example of the crackdown. (S.A. 21-1.[2]) PV does not dispute CNN's contention about the larger crackdown—or CNN's belief that PV is a source of misinformation whose ban fits within it—but instead narrowly claims CNN incorrectly implied PV was banned for violating Twitter's policy prohibiting misinformation instead of specifically stating that PV was banned for violating Twitter's doxxing policy. (*See* A9-11 at ¶¶ 7-11, 13; A20 at ¶¶ 48-49.)

This appeal presents a simple question: is there any significant reputational impact in the mind of the average viewer if CNN's commentary allegedly implies, by omission, that Twitter banned PV for violating a content policy prohibiting misinformation, rather than if it had fully recited PV's pleaded truth: that PV repeatedly violated another content policy prohibiting "doxxing," which protects the physical safety of others? The District Court correctly answered "no," ruling that CNN's commentary was "substantially true" under New York law and not

_____

[2] S.A. 21-1 is a manually filed video copy of the segment at issue, which CNN submitted as an exhibit for its motion to dismiss. (*See* S.A. 20-2 at 3, 29-30.) The specific statements at issue (to which CNN is citing throughout the brief, unless otherwise stated) begin at approximately 6 minutes, 44 seconds into the video and continue until approximately 7 minutes, 50 seconds.

"materially false" under federal law, particularly as the First Amendment compelled ample "breathing space" for CNN's reporting.

On appeal, PV attempts to obscure the facts: asserting the ban was for disseminating "truthful yet private information" (even though that is not what Twitter stated); suggesting the alleged falsity at issue is that CNN accused PV of "publishing false information" (even though that is not the claim in the Complaint); falsely claiming the District Court relied solely on New York law for dismissal (even though the District Court also applied federal law); and mixing up the District Court's analysis with libel-proof and incremental harm analyses (even though the District Court properly applied substantial truth and material falsity analyses). This is all artifice, wrong, and unavailing.

PV's appeal has a more fundamental flaw. By singularly focusing on the District Court's application of New York law, PV does not address, and thus abandons any challenge to, the District Court's alternative holding that the Commentary was not "materially false" under federal law and the First Amendment. PV's omission is likely deliberate, as the Supreme Court and other Circuits have expressly stated material falsity requires assessing "comparative harm" and the impact the alleged falsity on the plaintiff's "reputation in the community." Further, the law is clear that the reputational impact must be "significant" for a statement to be materially false. The District Court correctly

applied this federal law analysis. The District Court's dismissal can be affirmed on the simple basis that PV abandoned any challenge to the District Court's material falsity holding and thus waived any argument here.

In addition, PV's misleading objection to a "comparative harm" assessment—its primary basis for reversal—is directly refuted by both New York and federal law.

Finally, the District Court's dismissal can be affirmed for two related reasons: 1.) PV did not adequately allege a defamation by implication claim, and 2.) PV cannot plausibly allege actual malice—i.e., that CNN subjectively "entertained serious doubt" about the truth of its commentary, let alone that CNN intended to convey the purported implication on which PV's claim depends.

### A. Statement of the Facts.

PV asserts it is an "investigative journalism organization" which "investigates and exposes corruption, dishonesty, . . . and other misconduct" with the goal of "enhancing ethical conduct and institutional transparency in American society." (A8 at ¶ 3; A12-13 at ¶¶ 20-21.) PV has targeted CNN, as well as others, in several of its pieces, including by publishing undercover recordings of CNN's editorial meetings. (A13 at ¶¶ 22-24; A17 at ¶ 36; A21 at ¶ 51.)

On February 11, 2021, Twitter suspended PV for "repeated violations of Twitter's policies prohibiting the sharing—or threats of sharing—of other people's

private information without consent." (A7-8 at ¶ 2.) The actual policy (hereinafter, the "Anti-Doxxing Prohibition") states:

> Sharing someone's private information online without their permission, ***sometimes called doxxing***, is a breach of their privacy and of the Twitter Rules . . . . Sharing private information can pose serious safety and security risks for those affected and can lead to physical, emotional, and financial hardship. . . . ***[Twitter's] primary aim is to protect individuals from coming to physical harm as a result of their information being shared*** . . . . [Twitter] also factor[s] in the intent of the person sharing the information. For example, if we believe that someone is sharing information with an abusive intent, or to harass or encourage others to harass another person, we will take action.
> . . .
> The following are ***not in violation of this policy***:
> . . .
> - Sharing information that is publicly available elsewhere, in a ***non-abusive manner***.

(S.A. 20-2 at 6-7 (emphasis added).) PV disputes Twitter's reason for suspending its account, but acknowledges that Twitter cited the Anti-Doxxing Prohibition. (A14-17 at ¶¶ 27-36.)

CNN reported the suspension the same day, including in a Tweet by CNN anchor Ana Cabrera and an article by Brian Fung, both of which essentially restated Twitter's reason for the ban. (A7-9 at ¶¶ 2, 6; A16-17 at ¶¶ 31, 37; A19 at ¶ 43; S.A. 20-2 at 11.)

Several days later, the following segment (the "Commentary") aired live on CNN during a regular telecast of "CNN Newsroom":

> CABRERA: And of course social media plays such a huge role here. We're starting to see companies crack down to try to stop the spread

of misinformation and to hold some people who are spreading it accountable, Brian. For example, Twitter has suspended the account of Project Veritas, a conservative activist organization, at least that's how they couch themselves with followers including Donald Trump Jr., Eric Trump, but this is part of a much broader crackdown as we mentioned by social media giants on accounts that are promoting misinformation.

STELTER: Yes. And these companies' policies are changing as time goes on, becoming more strict as time goes on, and as a result groups like Project Veritas, no connection to QAnon, but Project Veritas, a very controversial conservative group, got swept up in a Twitter policy by violating multiple rules on the site, rules that to be honest did not exist five years ago. So it can be confusing for people as these platforms change and then enforce the rules more severely than before to know what is allowed and what is not allowed.

However, of course, these are private platforms. They can change the rules whenever, however they want. That's important context.

(S.A. 21-1; *see* A17-18 at ¶¶ 38-40.)

## B. Course of the Proceedings.

PV's Complaint asserts a single claim of defamation. Although PV contended the Commentary was directly defamatory, its pleaded theory of falsity was actually based on a narrow, purported implication: i.e., that CNN defamed PV "by stating that Twitter banned the organization's Twitter account for 'misinformation' in violation of Twitter's authenticity policy[.]" (A9-11 at ¶¶ 7-11, 13; A20 at ¶¶ 48-49.) PV claims this is false because Twitter in fact banned PV for violating the Anti-Doxxing Prohibition. (*Id.*)

8

###### i.    CNN's Motion to Dismiss.

CNN moved to dismiss. (A28-30.) First, CNN argued PV did not adequately plead a defamation by implication claim under New York law. (S.A. 20-1 at 11.) Second, CNN asserted CNN's Commentary was substantially true compared against the alleged falsity—i.e., the exact reason Twitter banned PV is immaterial in the context of the Commentary, and its "gist" and reputational impact is the same regardless of whether that reason is mentioned. (*Id.* at 12-18.) Third, for similar reasons, CNN asserted PV failed to meet the higher standard of showing CNN's Commentary was materially false, as required by the First Amendment. (*Id.*) Last, CNN maintained PV did not plausibly allege actual malice, as PV's allegations could not plausibly show that CNN subjectively doubted the truth of the Commentary. (*Id.* 18-25.)[3]

In response, PV contended it plausibly stated a defamation claim, "whether directly or by implication," because CNN "falsely claimed that Twitter suspended Project Veritas for violating Twitter's policies regarding spreading 'misinformation'[.]" (S.A. 22 at 10-14.) Citing the truism that there was a "material difference between telling the truth and telling a lie," PV further claimed

_____

[3] CNN's motion attached four exhibits: (1) the Anti-Doxxing Prohibition; (2) a copy of Ana Cabrera's Tweet; (3) a transcript of the Commentary; and (4) a video of the Commentary. (*See generally* S.A. 20-2; S.A. 21-1.) As PV did not object to the authenticity of these exhibits and they were referenced in or integral to PV's claims, they could be considered on a motion to dismiss. (A37-38 at n.5.)

9

CNN's Commentary was not substantially true under New York law. (*Id.* at 14-23.) PV argued it plausibly pleaded actual malice based on CNN's prior "truthful" reporting on PV's ban, PV's retraction demand, and CNN's "animosity" toward PV. (*Id.* at 23-26.)

CNN thereafter filed its reply. (S.A. 26.)

### ii.     The District Court's Order of Dismissal.

The District Court granted dismissal on March 17, 2022. (A33-55.) The Order relied upon PV's Complaint as well as Exhibits 1, 2, and 4 to CNN's Motion to Dismiss "because there appears to be no dispute as to authenticity and said documents are central to Project Veritas's claim," but it did not consider the transcript due to the partial omission of the Commentary. (A37-38 n.6.)

The District Court ruled: 1.) the Commentary did not state a claim for direct defamation, but stated a defamation by implication claim (A44-48); 2.) the Commentary was "substantially true" under New York law (A48-52); 3.) the "same analysis applies to Defendant CNN's material falsity arguments based upon federal law" (A53 (citing *Air Wisc. Airlines Corp. v. Hoeper*, 571 U.S. 237 (2014)); and 4.) it could not "uphold Project Veritas' policy arguments, as the Supreme Court has recognized that there can be times when alleged false speech is insulated from liability" (A53-54 (citing *Phil. Newspapers, Inc. v. Hepps*, 475 U.S,

767, 778 (1986)). The Court consequently declined to address whether PV plausibly alleged actual malice. (A54-55.)

### iii.    The Appeal.

On appeal, PV does not contest that it is a "public figure," the District Court's consideration of any exhibits, or the Court's ruling that PV only stated a defamation by implication claim. PV also amps up its florid rhetoric to assert a false dichotomy: CNN directly accused PV of publishing false information when Twitter stated it only published the "truth."

PV primarily takes aim at the District Court's substantial truth holding, arguing the Court applied a forbidden "comparative harm" test under New York law, but largely cites cases concerning the libel-proof and incremental harm doctrines—neither of which are at issue here. Based on this misinterpretation of controlling law, PV also argues the District Court impermissibly weighed evidence on a motion to dismiss concerning the reputational impact of being accused of spreading misinformation versus that of disseminating truthful yet private information. PV does not specifically address the constitutional requirement of "material falsity" or the impact of the First Amendment on its claims.

Finally, recognizing that this Court may affirm for any reason in the record, PV contends it plausibly pleaded actual malice primarily based on Ms. Cabrera's

11

Tweet reporting PV's ban. PV also argues CNN published the Commentary as part of preconceived storyline to malign PV and rejected PV's retraction demand.

### C. Standard of Review.

The Court reviews a dismissal for failure to state a claim *de novo*, accepting all well-pleaded factual allegations in the Complaint as true and construing them in the plaintiff's favor. *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1251 (11th Cir. 2021). The Court "need not, however, accept as true a complaint's conclusory allegations or legal conclusions." *Id.* "A prevailing party is entitled to defend its judgment on any ground preserved in the district court," and this Court "may affirm for any reason supported by the record, even if not relied upon by the district court." *Marrache v. Bacardi U.S.A., Inc*., 17 F.4th 1084, 1097 (11th Cir. 2021).

## SUMMARY OF THE ARGUMENT

The District Court correctly dismissed PV's Complaint, and that decision should be affirmed for multiple reasons.

The District Court made three key rulings below: 1.) PV asserted a claim of "defamation by implication"; 2.) the Commentary was "substantially true" under New York law; and 3.) the Commentary was not "materially false" as required under the First Amendment. On appeal, PV only seriously addresses the "substantial truth" ruling.

First, PV's failure to directly challenge the District Court's ruling that the Commentary was not "materially false" under federal law compels affirmance, as this alternative holding is dispositive of PV's claims.

Second, PV's primary argument for overturning the dismissal is that the District Court employed a prohibited "comparative harm" analysis by erroneously applying the libel-proof and incremental harm doctrines. This is a straw man argument, and meritless, as the District Court did not apply these doctrines. Instead, the District Court employed the exact analysis required under New York law for substantial truth and under federal law for material falsity, both of which require the very "comparative harm" analysis that PV argues is prohibited.

Third, the District Court correctly ruled that the Commentary was not materially false, requiring dismissal under the First Amendment. (*See* A51, A53.) The District Court correctly ruled that the "truth" of PV being banned for repeated violations of Twitter's Anti-Doxxing Prohibition had a similar reputational impact to being banned for violating a Twitter policy relating to misinformation. (A51.) That is the precise analysis required under the First Amendment, and to the extent there is any doubt, the "breathing space" required for robust reporting on public figures and issues of public concern further supports dismissal.

Fourth, the District Court similarly identified and applied the appropriate standards for substantial truth under New York law, correctly finding CNN's Commentary would have had no "different effect on the mind of the average reader" if it had added PV's pleaded truth (i.e., that it was banned for violating the Anti-Doxxing Prohibition). (*See* A49-52.)

Fifth, as the Court concluded PV's claim was for defamation by implication rather than direct defamation, and as PV does not challenge that ruling on appeal, PV was required to plead facts under New York law plausibly showing PV endorsed the purportedly defamatory inference. PV failed to do so.

Last, although the District Court did not reach this issue below, the Court can also affirm dismissal because PV did not plausibly plead CNN published the Commentary with actual malice (i.e., that CNN knew or was highly aware its Commentary was false at the time of publication) for two reasons. First, PV does not address the additional burden in pleading actual malice for defamation by implication claims, which requires pleading CNN subjectively knew and intended to convey the purportedly defamatory implication. Second, PV's asserted actual malice theory is meritless, as CNN's knowledge that Twitter banned PV for violating the Twitter Anti-Doxxing Prohibition, CNN's supposed ill will for PV, and PV's retraction demand do not plausibly suggest CNN subjectively doubted the truth of the Commentary.

14

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.    Legal Standard.

New York law applies to PV's claim. (A42.) New York puts "particular value" in resolving defamation claims on the pleadings "so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Armstrong v. Simon & Schuster, Inc.*, 649 N.E.2d 825, 828 (1995). A defamation claim under New York law requires five elements: "(1) a . . . defamatory statement of and concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability." (A43 (quoting *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).) "[O]nly statements alleging facts can properly be the subject of a defamation action." *600 W. 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 934 (N.Y. 1992). Moreover, "[b]ecause falsity is an element of New York's defamation tort, and 'falsity' refers to material not substantially true," in order to avoid dismissal, "the complaint . . . must plead facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Group*, 864 F.3d 236, 247 (2d Cir. 2017); *see also Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 327 (S.D.N.Y. 2021) (granting dismissal where plaintiffs "admit[ed] in their own pleading" facts which demonstrated the

15

substantial truth of the allegedly defamatory statements). When considering the purportedly defamatory statements, the "words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader." *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985). Defamation by implication claims additionally require proof that the language reasonably imparts, and that the speaker intends or endorses, the false innuendo. *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012).

As PV concedes it is a public figure, the First Amendment imposes significant additional requirements. *See, e.g.*, *Coral Ridge*, 6 F.4th at 1252. As discussed below, PV must plausibly plead: 1.) the alleged statements are "provable as false before there can be liability under state defamation law," *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990); 2.) the statements are "materially false," *Air Wisc. Airlines Corp. v. Hoeper*, 571 U.S. 237 (2014); and 3.) CNN made the statements with "actual malice," *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *see also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016) (adopting plausibility standard for allegations of actual malice).

## II.    PV's Claim Does Not Depend Upon Any Specific False Statement Of Fact From The Face Of The Commentary.

The Court below concluded PV could not proceed on a theory of direct defamation. (A45-46.) That determination, which PV does not address on appeal, is a key part of the District Court's analysis and informs CNN's arguments below.

16

The Complaint asserts the Commentary directly defamed PV by making a "false statement of fact to the effect that Twitter had banned Project Veritas because [it] violated Twitter's rules related to 'authenticity' by 'promoting misinformation'[.]" (A9-11 at ¶¶ 7-11, 13; A20 at ¶¶ 48-49.) No such "statement," however, appears in the Commentary. (S.A. 21-1.)

The Commentary *does* make a number of assertions: 1.) that Twitter banned PV; 2.) that social media companies were cracking down on sources of misinformation; and 3.) that PV's ban was part of that crackdown. These assertions, however, cannot form a part of PV's claim, as they are indisputable (e.g., PV *was* banned) or otherwise nonactionable under federal or New York law. *See Milkovich*, 497 U.S. at 21; *Coral Ridge*, 6 F.4th at 1252; *Project Veritas v. Leland Stanford Junior University*, 2022 WL 1555047, at *8 (W.D. Wash. May 17, 2022). As such, construing the allegations in PV's Complaint in its favor, the District Court correctly ruled the Commentary's individual assertions could still "be literally true in isolation" and could not support a direct defamation claim. (A45-46.)

As pleaded, PV's asserted theory of falsity is decidedly narrow: i.e., Ms. Cabrera "falsely claimed that Twitter suspended Project Veritas *for violating Twitter's policies regarding spreading misinformation* . . . when she herself knew and had previously reported that Twitter had claimed a violation of" the Anti-

Doxxing Prohibition. (S.A. 22 at 13; *see also* A9-11 at ¶¶ 7-11, 13; A20 at ¶¶ 48-49.) Neither Ms. Cabrera nor Mr. Stelter, however, stated PV was banned for "violating Twitter's policies regarding spreading misinformation"; instead, PV's specific policy transgression was left unsaid as it was immaterial. (S.A. 21-1.) Nonetheless, this omission of the exact nature of PV's ban from Twitter is PV's entire basis of its claim, which the District Court correctly found alleged, at most, defamation by implication. (A45-46.)

*That* is the narrow theory of falsity against which the sufficiency of PV's Complaint must be measured, and on which PV asserts it should be allowed to proceed to discovery. For the reasons set forth below, however, this theory of falsity fails to state a plausible claim for defamation.

## III. PV's Failure To Address The District Court's Ruling On Material Falsity Is Fatal.

PV does not substantively challenge the District Court's key ruling, and thus waives any argument, that the Commentary is not materially false under federal law and the First Amendment. (A53-54.) This forfeiture is fatal.

It is beyond cavil that a party forfeits a challenge to a district court's ruling when that party does not "plainly and prominently" raise it, "for instance by devoting a discrete section of his argument" to the issue or mentioning it in the Statement of Issues. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680-81 (11th Cir. 2014). "Passing references" are not enough, and issues "buried" in

arguments are deemed abandoned; moreover, raising such arguments in a reply brief "come[s] too late." *Id.* at 682-83. This rule is "basic to our adversary system," and while abandonment is prudential and may be relaxed in extraordinary circumstances, no such circumstances are present here. *See U.S. v. Campbell*, 26 F.4th 860, 872-73 (11th Cir. 2022) (*en banc*).

PV does not contest the Court's material falsity ruling, and in fact ignores it and misleads the Court on the proceedings below. PV neither mentions the material falsity ruling in its Statement of Issues nor seeks reversal of that ruling (PV.Br. at 4-6); it does not acknowledge that ruling in describing the order below (see PV.Br. at 2); it further omits CNN's arguments concerning material falsity in its summary of the proceedings below (*compare* PV.Br. at 13 *with* A29 *and* S.A. 20-1 at 12-18); and it does not separately analyze whether the Commentary is materially false.[4] Nor is there any discussion of the First Amendment, from which the material falsity requirement derives, anywhere in the brief.

The closest PV approaches to addressing the issue is an oblique reference in a footnote. (PV Br. at 27 n.17.) PV acknowledges the District Court cited *Air Wisconsin*, which PV dismisses as a "non-defamation" case, "as supposedly justifying its comparative harm test under federal law." (*Id.*) PV contends,

---

[4] The Brief uses the term "materially false" just once, in its Summary of Argument. (PV.Br. at 4.)

however, the Supreme Court "did not even purport to do so[.]" (*Id.*) CNN addresses those unelaborated points below. *Infra* § V. Regardless, this single footnote reference to "federal law" does not adequately challenge the District Court's holding on material falsity.

In sum, PV treats this ruling by the District Court "as though [it does] not exist," and it has therefore abandoned any challenge to it. *Sapuppo*, 739 F.3d at 680, 683. Thus, this Court may affirm dismissal.

## IV.   PV's Primary Basis For Reversal Fails Because The District Court Did Not Apply A Libel-Proof Or Incremental Harm Analysis.

Before turning to the merits of the District Court's holdings on material falsity and substantial truth, PV's argument that the District Court applied a forbidden "comparative-harm approach" deserves separate refutation, as this is PV's primary assertion of "error." (*See* PV.Br. at 4-5, 24-29.) In effect, PV contends the District Court committed two cardinal sins: 1.) engaging in a libel-proof-type analysis; or alternatively, 2.) employing an "incremental harm" analysis. (PV.Br. at 26-29.) These strawman arguments are wrong.

### A.    The District Court Did Not Employ A Libel-Proof Analysis.

Throughout its brief, PV suggests the District Court applied some form of the libel-proof doctrine (calling it a "comparative-harm approach"[5]), citing *Desnick*

---

[5] The two are not interchangeable. As discussed below, weighing the "comparative harm" of the alleged falsity against the reputational impact of the asserted "truth"

*v. Am. Broad. Cos.*, 44 F.3d 1345, 1350 (7th Cir. 1995) (Posner, J.), which held that a charge of embezzlement cannot be justified by proof that the accused is also a sexual deviant or lacks a reputation to protect. (PV.Br. at 27-29 & n.18.) In support, PV invokes a litany of cases for the unremarkable proposition that a false accusation of committing a specific crime cannot be justified because the plaintiff committed other, substantially unrelated crimes. (*See* PV.Br. at 25-27 & n.16.)

Nowhere, however, did the District Court hold PV was "libel-proof" and lacked any reputation to protect. *See Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 394 (S.D.N.Y. 1998) ("A libel-proof plaintiff, as the phrase implies, cannot be harmed because the plaintiff's reputation has already been so damaged that further falsehoods do not cause any additional damage.").

Instead, the reputational assessment the District Court *must* and *did* perform looked to whether being banned for violating one part of Twitter's content moderation policies (rules relating to authenticity) poses any significant difference in reputational impact than being banned for violating another part of Twitter's content moderation policies (for doxxing). (A50-51.) That was not a libel-proof analysis. Moreover, the competing accusations in this instance were related (as opposed to a libel-proof analysis's comparison of substantially unrelated

---

is an integral part of the federal material falsity analysis. *Infra* § V. Moreover, New York law of substantial truth requires an assessment (i.e., a comparison) of the impact of the pleaded truth and falsity on the minds of average viewers. *Infra* § VI.

accusations of misconduct): in both cases, PV was said to have violated Twitter content moderation policies that prohibited posting harmful information. This is far removed from PV's preferred dichotomy between being called a "sexual deviant" rather than an "embezzler," as with a libel-proof analysis. (*See* PV.Br. at 28.) Instead, the facts and analysis below was perfectly in-line with those in the authorities cited by the District Court holding that fine or technical distinctions in the accused behavior are not significant enough to allow a defamation claim to proceed. *See Bustos v. A&E Television Networks*, 646 F.3d 762, 768 (10th Cir. 2011) (finding no material difference between being identified as a member of the Aryan Brotherhood and merely being affiliated); *Nichols v. Moore*, 477 F.3d 396, 398, 401 (6th Cir. 2007) (finding statement that plaintiff was "arrested in connection to" the Oklahoma City bombing substantially true under Michigan law, even though plaintiff was merely a material witness).

## B.     The District Court Did Not Apply An Incremental Harm Analysis.

The District Court also did not use an "incremental harm" analysis, as PV suggests by selectively citing numerous decisions criticizing the doctrine while simultaneously and correctly noting "no party raised, briefed, or argued" the issue below. (*See* PV.Br. at 29 n.18.)

In an incremental harm analysis, a court compares the additional reputational effect of one false statement against the reputational impact of other, truthful

22

statements *within the same story*. *See Bustos*, 646 F.3d at 765; Robert D. Sack,

*Sack on Defamation: Libel, Slander and Related Problems*, § 2:4.18 (5th Ed.

2022). The District Court did not compare competing statements from within the

Commentary, and it did not conclude the harm from the Commentary's truthful

statements outweighed the harm from the false statements (or, in this case, the false

implication). To the contrary, the Court merely weighed the reputational impact of

PV's pleaded falsity based upon the Commentary as conveyed (i.e., the alleged

implication that Twitter banned PV for violating rules against misinformation)

against the reputational impact of the Commentary if it had fully reported PV's

pleaded truth (i.e., the technical distinction that PV was in fact banned for violating

the Anti-Doxxing Prohibition). (A50-51.)

The primary case relied on by PV on appeal for its "no comparative-harm

approach" argument is *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348 (S.D.N.Y.

1998). (PV.Br. at 3-4, 17, 25, 29.)[6] Although PV repeatedly quotes *Jewell* for the

---

[6] PV also discusses the unreported district court opinion in *Mitre Sports International Ltd. v. Home Box Office, Inc.*, 2010 WL 1507792 (S.D.N.Y. Apr. 15, 2010), which does not stand for a broad proposition that "substantial truth cannot turn on a comparative harm test." (*See* PV.Br. at 39-40.) That conclusion is rejected by the cases cited herein, *infra* § VI, and the *Mitre* decision is exceedingly narrow. The *Mitre* court did not discuss "comparative harm" but instead decided that the broadcast at issue "focused exclusively on conditions in India and Pakistan," the reporter for the story "expressly declined an invitation to describe the conditions depicted in the segment as part of a larger problem that existed in other parts of Asia," and thus any negative reports on plaintiff's operations in China could not "render the segment's depictions of alleged conditions in India

proposition that "the substantial truth doctrine is not concerned with harm" to argue the District Court's substantial truth analysis was improper, such language was from its discussion of incremental harm. *See Jewell*, 23 F. Supp. 2d at 387-96. The language that the "substantial truth doctrine is concerned with truth (regardless of harm)" is dicta only intended to contrast that doctrine with incremental harm, which "is concerned with harm (regardless of truth)." *Id.* at 394. When applying the substantial truth test, *Jewell* (like the District Court below) assessed whether "a reasonable reader would not have reacted differently" to either the alleged falsity or the pleaded truth. *Id.* at 366-69.

To the extent PV contends that *Jewell's* dicta concerning "harm" prohibits any weighing of an alleged falsity's *reputational impact* on the mind of the average viewer, that is directly contrary to both federal and New York law, as discussed below. *Infra* §§ V-VI. This reading is also internally inconsistent, as the *Jewell* opinion acknowledged that to assess substantial truth, the court "looks to the 'implication' of the [challenged] statement . . . and compares that 'implication' to the truth" to "determine whether the 'implication' would 'have a different effect on the mind of the reader from that which the pleaded truth would have produced[.]"

---

substantially true." *Mitre*, 2010 WL 1507792 at *2. That is nowhere near the alleged factual situation in this case.

*Jewell*, 23 F. Supp. 2d at 393-94. That latter analysis is the exact analysis applied by the District Court.

PV also explicitly relies on a passage from Justice Gorsuch's opinion in *Bustos*, which criticizes the incremental harm analysis as "arbitrary." (PV.Br. at 28-29.) PV omits, however, the parts of the passage in which Justice Gorsuch endorses the application of a "material falsity" analysis:

> Both doctrines [material falsity and incremental harm] compare the harm of a lie with the harm of the truth. But the material falsehood requirement allows us to consider true facts wherever and whenever discovered, doing away with incremental harm's seemingly arbitrary fixation on what happens to have been included in the same publication. At the same time, the material falsehood requirement narrows our comparison to statements on the same subject matter, making the task more amenable to judicial determination and the outcome more predictable to potential litigants. The incremental harm (or libel-proof plaintiff) analysis asks courts to compare harms flowing from statements on radically different matters that may even be incommensurable—which is worse, a perjurer or an inside trader? a liar or a cheat? By contrast, the material falsehood analysis focuses judicial attention on the comparatively narrow question whether the *particular* challenged statement is true or false on its *own terms*— a task that falls well within the traditional (if human and imperfect) truth-finding function of juries and judges.

*Bustos*, 646 F.3d at 766. A similar analysis is required for substantial truth. *See Franklin v. Daily Holdings, Inc*., 135 A.D.3d 87, 94, 21 N.Y.S.3d 6, 12 (N.Y. App. Div. 2015) ("Courts typically compare the complained of language with the alleged truth to determine whether the truth would have a different effect on the mind of the average reader."); *see infra* VI.

This selective misquoting to accuse the District Court of applying the libel-proof and incremental harm doctrines is a classic strawman argument, and it is wrong. The District Court applied the very material falsity and substantial truth analyses endorsed by Justice Gorsuch and required by New York law, respectively. (*See* A48-54.) The analyses the District Court *did* apply fully support dismissal.

## V.    The Court Properly Dismissed PV's Complaint On Material Falsity Grounds.

The District Court ruled PV did not plausibly allege CNN's reporting was "materially false" as an alternative basis for dismissal. (A53-54.) While similar to a substantial truth analysis under New York law, material falsity is a higher constitutional standard that addresses First Amendment free speech concerns.

As shown below, a material falsity analysis not only *requires* a comparative harm analysis, it also requires dismissal if the reputational impact of the alleged falsity is not "significant" when compared to the impact of the truth. No doubt recognizing this, PV ignores this precedent. Nevertheless, the District Court correctly applied this analysis, and dismissal should be affirmed on this basis.

### A.    History And Nature Of The Material Falsity Requirement.

In *New York Times Co. v. Sullivan*, the Supreme Court held defamation liability must adhere to "standards that satisfy the First Amendment." 376 U.S. 254, 269 (1964). The Court declared that such standards must include "actual malice"—i.e., that the defendant acted "with knowledge that [the statement] was

26

false or with reckless disregard of whether it was false or not"—in cases involving public officials, *id.* at 279-80, and later those involving public figures and matters of public concern. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 348-49 (1974).

The actual malice standard also requires that the statement be *materially* false. *Air Wisc.*, 571 U.S. at 247 (2014) ("[W]e have long held . . . that actual malice requires material falsity."); *see also Garrison v. Louisiana,* 379 U.S. 64, 74 (1964) (explaining *Sullivan* requires a public official to prove "the utterance was false"); *see also Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (requiring proof of falsity in cases involving speech on matters of public concern).[7] Therefore, while the materially falsity requirement typically affects the plaintiff's ultimate burden of proof, in the complaint, a public figure must identify a plausible falsity, and also specifically show that each allegedly defamatory statement is *materially* false. *Broker's Choice*, 861 F.3d at 1104-06; *see also Rinsley v. Brandt*, 700 F.2d 1304, 1310 (10th Cir. 1983) (plaintiffs must "identify[] particular statements or passages that are false").[8] This requirement extends to claims for

---

[7] PV does not contest that it is a public figure. Even if PV were not a public figure, the requirement would still apply because the speech at issue involves "matters of public concern." *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1106 (10th Cir. 2017).

[8] The material falsity requirement directly "affects the allocation of the burden of proof," at summary judgment and trial. *Broker's Choice*, 861 F.3d at 1110. The Tenth Circuit in *Broker's Choice* declined to address that burden of proof at the motion to dismiss stage, finding the "essence of the inquiry . . . remains the same

defamation by implication. *See Parks v. LaFace Records*, 329 F.3d 437, 462 (6th Cir. 2003) ("As with a traditional defamation claim, a plaintiff in a defamation-by-implication claim must establish a material falsity."); *see also Rinsley*, 700 F.2d at 1310.

Generally, as to "falsity," a "statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (quoting Robert Sack, *Libel, Slander, and Related Problems* 138 (1980)). Thus, "[m]inor inaccuracies do not amount to falsity" in the defamation context "so long as 'the substance, the gist, the sting, of the libelous charge be justified,'" *Masson*, 501 U.S. at 517; *see Air Wisc.,* 571 U.S. at 255 (allowing "some minor imprecision, so long as 'the gist' of the statement is accurate").

With respect to falsity, the term "material" necessarily refers to a statement's reputational impact. *Air Wisc.*, 571 U.S. at 252; 1 Rodney A. Smolla, *Law of Defamation*, § 5:17.50 (2d ed. 2022) ("In a defamation claim, what is material is what would impact the plaintiff's reputation in the minds of the community."). In *Air Wisconsin*, the Supreme Court addressed the application of immunity afforded

---

whether the burden rests" on plaintiff or defendant, and ruled the program at issue was not materially false on a motion to dismiss. *Id*. at 1110-11.

under a federal statute incorporating the actual malice standard.[9] In explaining the test for material falsity articulated in *Masson*, Justice Sotomayor, writing for the majority, asked "what it means for a [false] statement to produce 'a different effect on the mind of'" the relevant community member, and answered succinctly: "In defamation law, the reputational harm caused by a false statement *is* its effect on a reader's or listener's mind." *Id*. at 252 (emphasis in original); *see also id*. at 250 ("In determining whether a falsehood is material to a defamation claim, we care whether it affects the subject's reputation in the community.").

Further, in assessing materiality, the reputational impact of the alleged falsity must be "significant" to be "material." *Bustos*, 646 F.3d at 765 (the alleged falsehood must be "likely to cause reasonable people to think 'significantly less favorably' about the plaintiff than they would if they knew the truth."); *Pope v. Chronicle Pub. Co.*, 95 F.3d 607, 613 (7th Cir. 1996) (the "publication . . . must make the plaintiff significantly worse off than a completely or literally truthful publication would have.").[10] If a misstatement causes only real but "modest

---

[9] For these reasons, PV is wrong to dismiss *Air Wisconsin* as a "non-defamation" case that does not "justif[y a] comparative harm test under federal law." (PV.Br. at 27 n.17.)

[10] In *Air Wisconsin*, the Court found that under the applicable federal transportation statute, materiality was an "objective" standard, "involving the [hypothetical] significance of an omitted or misrepresented fact to a reasonable" relevant community member, and there must be a "substantial likelihood" the community member "would consider it important." 571 U.S. at 252.

[reputational] harm," it is not actionable. *Broker's Choice*, 861 F.3d at 1107, 1111. *See also Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993) ("Falsehoods that do not harm the plaintiff's reputation more than a full recital of the true facts about him would do are thus not actionable."). Moreover, "[t]he omission of additional favorable information from an otherwise true publication does not render a statement materially false." *Broker's Choice*, 861 F.3d at 1108.[11]

Finally, as the First Amendment requires proper "breathing space" for free speech, any doubts on the Commentary's falsity should be decided in favor of non-actionability. *See, e.g.*, *Hepps*, 475 U.S. at 778 ("To provide 'breathing space' . . . for true speech on matters of public concern, the Court has been willing to insulate even demonstrably false speech from liability[.]"); *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (D.C. Cir. 1988) ("Where the question of truth or falsity is a close one, a court should err on the side of nonactionability."). Moreover, as the material falsity requirement flows from and is part of the actual malice standard, "[f]orcing publishers to defend inappropriate suits through expensive discovery proceedings in all cases would constrict [the] breathing space

---

[11] *See Turner v. Wells*, 879 F.3d 1254, 1271 (11th Cir. 2018) (citing cases and concluding, under First Amendment, defendants may "choose the true facts to include in their publication"; deference must be given to publisher's editorial discretion).

[required under the First Amendment] in exactly the manner the actual malice standard was intended to prevent." *Michel*, 816 F.3d at 702.

**B.     The CNN Commentary Is Not Materially False.**

The District Court correctly dismissed the Complaint because PV did not plausibly allege the Commentary is materially false.

First, the District Court applied the correct material falsity analysis. The Court compared the alleged falsity with the alleged truth, i.e., comparing the alleged false implication—"Twitter has suspended the account of Project Veritas for violating a policy that prohibits the **spreading or promoting of misinformation**"—with PV's pleaded truth—"Twitter has suspended the account of Project Veritas for violating a policy that prohibits the **sharing or threat of sharing of private information**." (A50 (original emphasis).) It then compared the reputational harm for both, and determined PV's "allegations and arguments do not plausibly suggest the truth (as pled in the Complaint) would have a different effect on the mind of the average reader in terms of the reputational harm." (*Id*.) This comparative reputational harm approach is the exact analysis urged by Justice Gorsuch in *Bustos* and its progeny, and is fully consistent with Supreme Court's approach in *Air Wisconsin*.

Second, the District Court correctly compared the reputational impact of PV's implied and actual misconduct, and found "while there is some difference"

31

between violating a misinformation and privacy policy, "both violations are similarly damaging to a journalist's reputation." (A51.) Repeatedly violating a prohibition against posting personal information that poses a "safety and security risk for those affected" impugns PV's journalistic integrity, period. But more to the point, it simply is not plausible that the difference between explicitly stating that PV repeatedly violated an Anti-Doxxing Prohibition and an (implied) violation of a policy related to the spread of misinformation would be "likely to cause reasonable people to think 'significantly less favorably'" about PV "than they would if they knew the truth." *Bustos*, 646 F.3d at 765. At most PV plausibly alleged only "modest" reputational harm that is simply non-actionable. *See also Haynes*, 8 F.3d at 1228 (dismissal justified where "details that, while not trivial, would not if corrected have altered the picture that the true facts paint").

PV's mere allegation that it suffered reputational damage is not a ticket to discovery; the material falsity doctrine "works as a screen against trivial claims" by requiring facts plausibly suggesting a "significant impact on the plaintiff's public reputation." *Bustos*, 646 F.3d at 765 ("By requiring a significant impact on the plaintiff's public reputation when compared to the truth, the material falsehood requirement works as a screen against trivial claims."). *Cf. Michel*, 816 F.3d at 702 (the "powerful interest in ensuring . . . robust reporting on public figures" requires application of plausibility pleading standard).

32

The District Court did not impermissibly decide a question of fact or weigh any evidence in deciding materiality. Instead, it focused on PV's factual allegations (stripping away its conclusory allegations of harm), compared the CNN Commentary to PV's pleaded truth, and then assessed the impact of each on the average, reasonable viewer, as *must* be done to assess the actionability of the alleged falsity. *See Broker's Choice*, 861 F.3d at 1111-12, n.37 ("Like the district court, we compare the episode and the seminar recording. Contrary to BCA's argument, this does not involve weighing evidence. We consider the seminar and the episode as understood by a reasonable person."). Indeed, on the question of fact here ("falsity"), the District Court assumed the Commentary was "false" as alleged by PV; but whether the statement is also *material* requires an assessment of the defamatory impact of the statement on the average viewer, which as noted above is an objective inquiry and is a traditional role for the Court in the first instance. *See, e.g.*, *Biro*, 883 F. Supp. 2d at 456-58 (New York law requires court to determine whether statement is reasonably susceptible of being defamatory "in the first instance"); *see also Turner v. Wells*, 879 F.3d 1254, 1262-63 (11th Cir. 2018) (whether statement of fact is susceptible to defamatory interpretation or "defamatory meaning" are "questions of law for the court," applying Florida law).

To the extent there is any doubt as to whether PV's theory of falsity is too immaterial to proceed into discovery, the District Court also correctly noted the

First Amendment at times "insulate[s]" an insubstantial amount of alleged falsity from liability to maintain adequate breathing space for true speech. *See Hepps*, 475 U.S. at 778; *Liberty Lobby*, 838 F.2d at 1292. This is particularly so here, in an omission case, as even if PV believes this information to be favorable, CNN had no duty to include it. *See Turner*, 879 F.3d at 1270; *Corp. Training Unlimited, Inc. v. Nat'l Broad Co., Inc.*, 981 F. Supp. 112, 122 (E.D.N.Y. 1997) ("[T]he First Amendment prohibits 'a rule that holds a media defendant liable . . . because it failed to include additional facts which might have cast plaintiff in a more favorable or balanced light."). CNN should not now be held liable under PV's defamation claim for omitting a detail that was not material to the whole focus and tenor of the segment, as doing so impermissibly chills and constricts the breathing space needed for robust public debate.

## VI.    The Court Also Properly Dismissed PV's Complaint On Substantial Truth Grounds.

The District Court correctly applied New York law concerning substantial truth, and PV fails to identify any reversible error in the District Court's analysis. Again, the Court may affirm on this basis.

### A.    The District Court Correctly Dismissed On Substantial Truth Grounds.

#### 1.    New York Law For Substantial Truth.

"Falsity is an element of defamation under contemporary New York law."

*Tannerite Sports*, 864 F.3d at 244; *Franklin*, 135 A.D.3d at 94, 21 N.Y.S.3d at 12

(plaintiff must show statement is "substantially false"). To encourage free

discourse, "Plaintiffs bear the burden of proving that the statements are false[.]"

*Proskin v. Hearts Corp.*, 14 A.D.3d 782, 783, 787 N.Y.S.2d 506, 507 (N.Y. App.

Div. 2005). Like material falsity, the substantial truth doctrine is grounded in the

value New York law places on free speech: "in light of the values of free speech

that are implicated, a relatively minor defamatory inaccuracy does not, as a matter

of law, do significant enough damage to plaintiff's reputation for the law to

provide compensation for it." *See Jewell*, 23 F. Supp. 2d 393 n.31.

Much like material falsity, the "test of whether a statement is substantially

true is 'whether the libel as published would have a different effect on the mind of

the reader from that which the pleaded truth would have produced.'" *Matovick v.

Times Beacon Record Newspapers*, 46 A.D.3d 636, 638 (N.Y. App. Div. 2007);

*see also Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 302 (2d Cir. 1986)

(applying New York law). Put differently, "[u]nder New York law, it is not

necessary to demonstrate complete accuracy to defeat a charge of libel. It is only

necessary that the gist or substance of the challenged statements be true." *Printers

II, Inc., v. Professionals Pub., Inc*., 784 F.2d 141, 146 (2d Cir. 1986). The "gist and

sting" and "effect on the mind of the reader" are two ways that New York law

refers to the same thing: "Defendant is permitted to prove the substantial truth of

[a] statement by establishing any other proposition ***that has the same 'gist' or***

*'sting' as the original libel, that is, the same effect on the mind of the reader*."
*Sharon v. Time, Inc*., 609 F. Supp. 1291 (S.D.N.Y. 1984).

"In assessing substantial truth, a court looks to the words of the allegedly defamatory communication – not to a party's summary or characterization of that communication." *Verragio, Ltd. V. AE Jewelers, Inc*., 2017 WL 4125368, at \*7 (S.D.N.Y. Aug. 23, 2017). As with material falsity, courts should consider "[t]he entire publication, as well as the circumstances of its issuance" in assessing substantial truth. *Tannerite*, 864 F.3d at 243. Indeed, context can be critical. *Franklin*, 135 A.D.3d at 94, 21 N.Y.S.3d at 12-13. The "omission of relatively minor details in an otherwise basically accurate account is not actionable." *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 383 (N.Y. 1977).

## 2.    The Commentary Is Substantially True.

PV solely claims CNN defamed it by *omitting* PV's specific Twitter policy violation from the Commentary, and therein allegedly implied "Twitter banned [PV's] Twitter account for 'misinformation' in violation of Twitter's authenticity policy[.]" (A9-11 at ¶¶ 7-11, 13; A20 at ¶¶ 48-49.) *Supra* § II. Despite that narrow claim of falsity, PV repeatedly urges this Court to assess substantial truth based on its false dichotomy between "publishing and 'promoting misinformation'" and "publishing truthful but (supposedly) private information." (PV.Br. at 23-24.)

Twitter, of course, did not say PV published truthful information. But regardless, the substantial truth question before the Court is not a simple comparison between misinformation and private information, as PV frames the issue. Instead, the question is whether CNN explicitly identifying PV's specific Twitter content policy violation would have had a different effect on the viewer. *Guccione*, 800 F.2d at 302. The appropriate comparison under New York law therefore is between the Commentary *as conveyed* versus the Commentary *with the additional omitted detail* that Twitter banned PV for repeatedly "sharing – or threatening to share" harmful private information, and assessing the gist and sting (i.e., the effect on the mind of the viewer) of that omission. *Id*.

As the District Court correctly concluded, including the particular reason given by Twitter for PV's ban in the Commentary would not have affected PV's reputation in the minds of average viewers. PV repeats a mantra that the reputational harm it suffered was to its reputation as a journalistic organization. And, indeed, that was the exact reputational harm that the District Court analyzed. (A51.) Yet, just as the District Court found, the pleaded truth "similarly maligns a journalist's professional reputation." (*Id.* (citing A19 at ¶ 44).) And PV has cited no plausible factual allegations in its Complaint or on appeal that suggests PV's (or any journalist's) reputation, credibility and "integrity" is not "malign[ed] by being accused of doxxing ("sharing" private information with consent), essentially

37

blackmail ("threatening to share" that private information) and endangering

people's safety (by posting an individual's private information). (*Compare* PV.Br.

at 30-34 *with* A51 *and* S.A. 20-2 at 6-8.) PV simply has not offered a plausible

basis for contending its reputation would *not* be maligned if CNN reported PV

actually engaged in misconduct that endangered people, instead of allegedly

implying it violated a Twitter policy related to misinformation. Under New York

law, that comparison of reputational impact is required, and requires dismissal. *See*

*Guccione*, 800 F.2d at 302 (account substantially true when substituting the precise

truth into the communication "call[ed] attention" to additional damaging details the

original account omitted); *Ctr. for Med. Progress*, 551 F. Supp. 3d at 327

(dismissing defamation claim where "no reasonable factfinder could conclude that

the Challenged Statements could have no effect on the mind of the reader different

than the effect caused by what Plaintiffs themselves plead").

Stated differently, the fact that the Commentary does not affirmatively

identify the specific policy that resulted in PV's ban does not change the "gist" of

the Commentary: that Twitter banned PV amid a broader crackdown on sources of

misinformation by social media platforms more strictly enforcing their content

rules. This gist is not meaningfully altered by adding the reason for PV's ban,

particularly when Mr. Stelter further clarified that PV had been "swept up" in

constantly changing and "confusing" rules. (*Id*.) In other words, "the omissions in

this case are not so material as to alter significantly the conclusion to be drawn from" what was already communicated in the Commentary. *Rinaldi*, 42 N.Y.2d at 383.

In sum, "the average reader" would not have "come away with a different impression of" PV as a journalistic enterprise if CNN included the specific reason for the Twitter ban. *See Guccione*, 800 F.2d at 302; *Chau v. Lewis*, 771 F.3d 118, 130-31 (2d Cir. 2014) (finding substantial truth where there was nothing to show "that the average reader would come away with a different impression of" plaintiff's business); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 48 (S.D.N.Y. 2017) (rejecting plaintiff's theory that defendant's failure to included added detail made video defamatory where detail "would do absolutely nothing to undercut the allegedly defamatory implication"); *see also Partington v. Bugliosi*, 56 F.3d 1147, 1160-61 (9th Cir. 1995) (if other non-actionable statements "would lead a reader to believe that [plaintiff] represented his client poorly, the additional item … will not in any way affect the reader's view of [plaintiff]").

## B.    PV's Arguments For Reversal Are Unsupportable.

PV main argument is the District Court erred in adopting a "comparative-harm approach." (*Compare* PV.Br. at 28-29 & n.18 *with supra* §§ IV-V.) Alternatively, PV claims that even if the District Court's approach was correct, 1.) being banned for posting harmful misinformation is worse than being banned for

posting harmful private information; and 2.) the substantial truth question is only for a jury. But these arguments fail for at least four reasons.

First, similar to the material falsity inquiry under federal law, New York law *requires* the type of "comparative harm" analysis PV vigorously tries to avoid. As discussed above, the "different effect on the mind of the reader" test used under New York law essentially requires the Court to engage in the very comparative harm analysis that PV says is prohibited. *E.g.*, *Chau*, 771 F.3d at 130. (A48-52.) While PV says New York's "substantial truth doctrine is not concerned with harm," (PV.Br. at 3, 4 (quoting *Jewell*, 23 F. Supp. 2d at 394)), at a minimum it *is* concerned with the impact of the alleged falsity on the minds of the reasonable reader, and that impact necessarily includes the reputational harm. *Guccione*, 800 F.2d at 302

 Second, as discussed above, PV hyperbolically suggests that failing to identify which Twitter content policy PV actually violated is akin to an accusation that it is a sexual deviant when it was an embezzler, or to accusing it of shoplifting when it in fact committed treason, or vice versa. (*See* PV.Br. at 22-23, 28; *see supra* § IV). This argument falls flat. PV's claim that Twitter stated it was banned for posting "truthful but private information" is inaccurate, and more fundamentally, Twitter's content moderation rules are just that—an assortment of several different provisions reflecting numerous categories of posts Twitter

prohibits, which together reflect the subjective views of a "private platform" that "can change the rules whenever, however they want." (*See* S.A. 21-1.) PV's hyper-technical distinction on which specific rule led to its suspension is certainly not a comparison between two distinct "crimes" that would warrant a finding that the Commentary was substantially false under New York law.

Third, there is no merit to PV's insistence that the inference that Twitter was banned for misinformation is "far more damaging," (PV.Br. at 3, 17-18), than the acknowledged reason for PV's ban from Twitter. If anything, the omission "worked in [PV's] favor." *Guccione*, 800 F.2d at 302. Again, the portion of Twitter's content moderation rules cited for PV's Twitter ban do not prohibit mere publication of "truthful but (supposedly) private information," as PV repeats exhaustively. (PV.Br. at 1, 3, 5-6, 8-9, 11, 13-19, 23-24, 29-30, 34, 36, 40.) To the contrary, the provision states that "sharing information that is publicly available elsewhere, in a *non-abusive* manner" is "*not in violation of this policy*." (S.A. 20-2 at 7 (emphasis added).) Rather, the plain text of the prohibition is directed at the posting of personal information ("doxxing") that poses a "safety and security risk for those affected."[12] (*Id.* at 6.) And again, while PV focuses on why posting

---

[12] "The goal of doxxing is typically retribution, harassment, or humiliation." *Greer v. Carlson*, 2020 WL 6064167, at *2 n.5 (S.D.N.Y. Oct. 14, 2020) (cleaned up) (quoting *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 859 (E.D. Mich. 2019)); Associated Press Stylebook (available at https://apstylebook.com/) ("doxxing" is "[t]he malicious publication of information such as home addresses,

misinformation may damage a journalist's credibility and integrity, it offers no plausible fact showing that Twitter's statement that PV violated the Anti-Doxxing Prohibition did not malign its reputation as a journalistic enterprise as the District Court ruled.

Fourth, PV argues that "the gravity of damages caused by a defamatory statement presents a question of fact 'peculiarly within the jury's province.'" (PV.Br. at 30; *see also id.* at 3, 5, 17.). The cases cited by PV, however—e.g., *Toomey v. Farley*, 2 N.Y.2d 71 (1956), *Yammine v. DeVita*, 43 A.D.3d 520, 840 N.Y.S.2d 652 (N.Y. App. Div. 2007) and *Calhoun v. Cooper*, 206 A.D.2d 497, 614 N.Y.S.2d 762 (N.Y. App. Div. 1994)—do not deal with the substantial truth question, but rather recite the law that the ***amount*** of damages is a question of fact for a jury after a finding of liability is made. They are irrelevant here. As noted above, New York law is clear that substantial truth is a determination that can be made as a matter of law at the motion to dismiss stage. *See, e.g.*, *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458-59 (S.D.N.Y. 2012) (finding statement substantially true on motion to dismiss).

---

phone numbers and email addresses"); Merriam-Webster.com Dictionary, Merriam-Webster (available at https://www.merriam-webster.com/dictionary/doxxing) (defining "dox" as "to publicly identify or publish private information about (someone) especially as a form of punishment or revenge").

## VII.  The Court May Affirm On The Independent Ground That PV Has Not Plausibly Pleaded A Defamation By Implication Claim.

On appeal, PV failed to challenge the District Court's ruling that it stated a defamation by implication claim. *See Sapuppo*, 739 F.3d at 680-83. New York law, however, imposes additional requirements on such claims, which PV failed to plead below or address on appeal.

Defamation by implication under New York law "is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." *Armstrong*, 649 N.E.2d at 829. New York requires "an 'especially rigorous showing' that (1) the language may be reasonably read to impart the false innuendo, and (2) the author intends or endorses the inference." *Biro*, 883 F. Supp. 2d at 466; *Stepanov v. Dow Jones & Co*., 120 A.D.3d 28, 37-38, 987 N.Y.S.2d 37, 43 (N.Y. App. Div. 2014). If "the implication arises due to the omission of certain facts, the Court will look to whether such omission would materially change the alleged implication or render untrue what is otherwise unchallenged." *Biro*, 883 F. Supp. 2d at 466.

Here, the District Court ruled the Commentary itself demonstrated that CNN "endorsed" a defamatory implication that Twitter banned PV for violating a misinformation policy. (A46-48.) On this one point, the District Court erred, as PV did not adequately plead the endorsement element.

43

In short, the Commentary alone does not affirmatively demonstrate CNN "obvious[ly]" endorsed the notion that Twitter banned PV for violating rules against misinformation specifically, as opposed to other parts of its content moderation policies. *See Biro*, 883 F. Supp. 2d at 466-67, 470. Ms. Cabrera never addressed the specific rule that Twitter invoked to effectuate the ban, or whether Twitter even *had* a specific policy justification. (S.A. 21-1.)[13] Mr. Stelter, in turn, did not endorse the notion that PV was banned for one rule over another. (*Id*.) To the contrary, he explained a more general trend in which social media companies were changing multiple policies, making those policies stricter, and enforcing them more severely. (*Id*.) The District Court decided the Commentary's "for example" language showed CNN "endorsed" the implication that Twitter banned PV for violating a policy regarding misinformation, (A47), but that language does not address an "example" of a specific *policy violation*. Instead, read in context, "for example" referred to the "broader crackdown . . . on accounts that are promoting information," without reference to content moderation policies facilitating the crackdown (if any). (S.A. 21-1.)

---

[13] Indeed, Twitter has no "misinformation" policy per se. That is why PV alleges CNN defamed it "by stating that Twitter banned the organization's Twitter account for 'misinformation' in violation of Twitter's authenticity policy[.]" (A9-11 at ¶¶ 7-11, 13; A20 at ¶¶ 48-49.)

Without more, PV has not offered any factual basis to plausibly show CNN endorsed the purportedly defamatory implication, and this Court may affirm dismissal on this basis. *See Biro*, 883 F. Supp. 2d at 469 (dismissing because "there is nothing to suggest that [defendant] intended or endorsed the 'strained' reading that [plaintiff] gives the passage to find the defamatory implication"); *see also Cabello-Rondón v. Dow Jones & Co.*, 2017 WL 3531551, at *7 (S.D.N.Y. Aug. 16, 2017) (plaintiff did not include sufficient allegations to satisfy "affirmatively intended" element); *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 437 (S.D.N.Y. 2007) ("[Plaintiff] alleges no facts that suggest that [defendant] affirmatively intended to imply [the purported implication].").

## VIII.  The Court May Affirm Because PV Did Not Plausibly Allege Actual Malice.

Although the District Court did not reach this issue, the Court can and should affirm dismissal because PV cannot plausibly allege CNN published the Commentary with "actual malice."

### A.    The Plausibility Standard For Pleading Actual Malice.

To plausibly plead actual malice, PV must allege facts plausibly showing that CNN "actually entertained serious doubts" about the Commentary or that CNN "was highly aware that the account was probably false." *Michel*, 816 F.3d at 702-03. This requires setting forth factual allegations plausibly showing the statements were "fabricated by the defendants, wholly imaginary . . . inherently

45

improbable, or obviously worthy of doubt." *Id.* at 705; *see also Coral Ridge*, 6 F.4th at 1252-53 (affirming dismissal where conclusory and "bare-bones allegations" were "insufficient to show [defendant] doubted the truth of its designation" of plaintiff as a hate group)"). Actual malice "requires more than a departure from reasonable journalistic standards," *Michel*, 816 F.3d at 703, and "even an 'extreme departure from professional [publishing] standards' does not necessarily rise to the level of actual malice," *Jacoby v. Cable News Network, Inc.*, 2021 WL 5858569, at *4 (11th Cir. Dec. 10, 2021) (*per curiam*) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 66). Further, actual malice "is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks*, 491 U.S. at 666 (1989); *Garrison v. Louisiana*, 379 U.S. 64, 73 (1964) ("Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred; even if he did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth."); *Donald J. Trump for President, Inc. v. CNN Broad., Inc.*, 500 F. Supp. 3d 1349, 1357 n.4 (N.D. Ga. 2020) ("[A]n intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice[.]"). The "mere existence of a false statement does not, on its own, demonstrate . . . knowledge of falsity." *Tobinick v. Novella*, 848 F.3d 935, 946 (11th Cir. 2017).

As PV has not challenged the District Court's ruling that it stated a *defamation by implication* claim, PV must *also* show that CNN subjectively intended to communicate the alleged defamatory implication or was subjectively reckless in disregarding the possible defamatory meaning of the Commentary. *See Kendall v. Daily News Pub'g Co.*, 716 F.3d 82, 89-90 (3d Cir. 2013) ("We agree with the First, Sixth, Seventh, and Ninth Circuits: plaintiffs in defamation-by-implication cases must show something beyond knowledge of, or recklessness in regard to, the falsity of the statements defamatory meaning."), *cited favorably in Klayman v. City Pages*, 650 F. App'x. 744, 750 (11th Cir. 2016). As explained by the Third Circuit: "in defamation-by-implication cases, showing known falsity alone is inadequate to establish an intent to defame . . . in such cases, plaintiffs must show something that establishes defendants' intent to communicate the defamatory meaning." *Kendall*, 716 F.3d at 90 (cleaned up); *see also Saenz v. Playboy Enters., Inc.*, 841 F.2d 1309, 1318 (7th Cir. 1988).

It is telling that PV fails to mention the plausibility standard of *Michel*—or even the First Amendment—on appeal. Yet as noted in *Michel*, strict application of the constitutional protections afforded by the actual malice test is necessary when, as here "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation. . . . Forcing publishers to defend inappropriate suits through expensive discovery

47

proceedings in all cases would constrict [the] breathing space [required under the First Amendment] in exactly the manner the actual malice standard was intended to prevent." 816 F.3d at 702.

### B. The Complaint Does Not Plausibly Allege Facts Showing CNN Acted With Actual Malice In Allegedly Implying PV Violated Twitter's Authenticity Policy.

PV plainly cannot meet the specific standards applicable to defamation by implication claims (which it altogether fails to address) as it does not identify any facts showing that CNN intended the implication, other than its speculative claims that CNN had a preconceived storyline and ill will toward PV. *See Kendall*, 716 F.3d at 93 ("The subjective nature of this inquiry requires that there be some evidence showing, directly or circumstantially, that the defendants themselves understood the potential defamatory meaning of their statement."); *Dodds v. American Broadcasting Co.*, 145 F.3d 1053, 1063-64 (9th Cir. 1998) (actual malice not shown where plaintiff did not demonstrate plaintiff "intended to convey the defamatory implication"); *Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1312 (M.D. Fla. 2021) ("the Court believes that Plaintiff must allege that Defendant published the articles with knowledge or reckless disregard for their defamatory implication.") *aff'd*, 2021 WL 5858569.

To the contrary, the full context of the Commentary belies any implication that CNN *intended* to convey an inaccurate reason for PV's ban. The reason for

48

PV's ban was simply not the focus of the Commentary and CNN cannot be liable for failing to report PV's ban in the manner it desires, i.e., by specifically noting the particular content moderation policy for which PV was banned amid a story concerned with broader trends. *See Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1243 (11th Cir. 1999) (defendant "not required" to make a point "as strongly as [plaintiff] would have); *Jacoby*, 2021 WL 5858569 at *5 ("But [plaintiff] is not entitled to having Defendants credit his preferred sources of information or structure its articles in the manner he desires.").

At most, the Complaint describes a negligent implication caused by omitting a detail that does not contradict Ms. Cabrera's stated perception that the Twitter suspension was part of a larger crackdown on "sources of misinformation." But a negligent implication is not actionable here. The Supreme Court stated in *Bose Corp. v. Consumers Union of U.S., Inc.* in a slightly different, but relevant, circumstance:

> The statement in this case represents the sort of inaccuracy that is commonplace in the forum of robust debate to which the New York Times rule applies. Realistically ... some error is inevitable; and the difficulties of separating fact from fiction convinced the Court in *New York Times*, *Butts*, *Gertz*, and similar cases to limit liability to instances where some degree of culpability is present in order to eliminate the risk of undue self-censorship and the suppression of truthful material. Erroneous statement is inevitable in free debate, and . . . must be protected if the freedoms of expression are to have the breathing space that they need . . . to survive.

466 U.S. 485, 513 (1984) (cleaned up).

49

As PV's factual allegations are not capable of raising a plausible inference of actual malice, i.e., that CNN intended the implication that forms the basis of PV's claim, this Court should affirm dismissal.

### C.    The Complaint Does Not Plausibly Plead Actual Malice Generally.

PV also fails to plausibly plead actual malice generally, i.e., that CNN generally knew, or was highly aware, its Commentary was factually false.

### 1.    There Is No Plausible Circumstantial Evidence Of Actual Malice.

PV has not alleged facts plausibly showing circumstantial evidence of actual malice. On appeal, PV lists four categories of purported evidence: (1) CNN allegedly had a "preconceived storyline"; (2) CNN was biased or had ill will toward PV; (3) CNN supposedly did not adhere to journalistic standards by ignoring Ms. Cabrera's Tweet (restating its "direct evidence" theory); and (4) CNN's ill will is shown through its failure to retract or apologize for the Commentary. (PV.Br. 38-42.) PV admits, correctly, that not one of these allegations could support actual malice on its own. (*Id.* at 38.) Instead, PV relies on a "cumulation" theory of actual malice, hoping the Court will be impressed with the totality of these allegations; but the total sum of implausible allegations of actual malice is still implausibility.

Stripping the Complaint to its non-conclusory factual allegations, PV's theory that CNN concocted a "preconceived storyline," (A13 at ¶ 24; A16-17 at ¶¶

35-36; A21 at ¶ 51), is based on PV's allegations that PV has issued some stories critical of CNN, PV "believes" that Twitter banned Mr. O'Keefe for an exposé about CNN, and CNN stated that PV may have committed "a felony" after PV published undercover recordings of CNN's editorial meetings. Thus, the theory goes, Ms. Cabrera and CNN exacted revenge on PV via the Commentary.

Taken together or alone, these allegations do not demonstrate CNN subjectively doubted its reporting in the Commentary and, thus, do not plausibly allege actual malice. *See, e.g., Turner*, 879 F.3d at 1273-74 (allegation that defendants failed "to properly analyze certain information" did not plausibly allege actual malice; affirming dismissal); *Coral Ridge*, 6 F.4th at 1253 (no plausible allegation of actual malice based on allegations that plaintiff's and defendants' own "conduct . . . would have created a high degree of awareness of" probable falsity; affirming dismissal); *Klayman*, 650 F. App'x at 750-51 (combination of alleged ill will, and failure to heed to correction demand were "characterizations" and immaterial to whether defendants "actually had doubts about the veracity of the statements or alleged implications" at issue, and did not constitute actual malice); *Michel*, 816 F.3d at 703-704 (conclusory allegations cannot establish actual malice at pleading stage; affirming dismissal). *See also Harte-Hanks*, 491 U.S. at 666 ("It is worth emphasizing that the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the

term.");[14] *Berisha v. Lawson*, 973 F.3d 1304, 1314 (11th Cir. 2020) (no actual malice found where there was nothing to show defendant began with an "unfounded plan to take down" plaintiff); *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n. 17 (11th Cir. 1999) (author's motives "play[] no role in determining . . . 'actual malice'").

The sole remaining circumstantial allegation regarding actual malice relates to CNN's refusal to honor PV's retraction demand. (PV.Br. at 41-42). Yet, there is no plausible inference that CNN acted with actual malice because it refused to retract the CNN Commentary *after* it aired. *See Hunt v. Liberty Lobby*, 720 F.2d 631, 643 n.19 (11th Cir. 1983) ("[T]he failure to retract or correct a falsehood does not prove actual malice."); *see also Fairfax v. CBS Corporation*, 2 F.4th 286, 295 (4th Cir. 2021) (alleged refusal to correct or retract story was not "probative of [] state of mind at the time of publication"). PV's newfound interest on appeal in CNN's stated reason for its refusal to retract the Commentary—i.e., that CNN did not believe its Commentary was defamatory per se—is, respectfully, frivolous. (PV.Br. at 42-42.) CNN's response is not, as PV contends, an admission that CNN

---

[14] PV's reliance on *Harte-Hanks* and other factually dissimilar cases is unhelpful, as they do not present the same factual scenario. For example, in *Harte-Hanks*, the defendant relied on a single source for a highly improbable story, and that source was contradicted by five other sources. 491 U.S. at 690-92. *See also Tavoulareas v. Piro,* 817 F.2d 762, 789, 795 (D.C. Cir. 1987) (en banc) ("evidence of ill will or bad motives will support a finding of actual malice only when combined with other, more substantial evidence of a defendant's bad faith.").

believed the Commentary was false, never mind whether CNN doubted the Commentary at its publication. To the contrary, the fact that CNN told PV the Commentary was not "defamation 'per se'" means simply that PV lacked a claim, due to a failure of one or more elements for such a claim—including falsity. *E.g.*, *Cortes v. Twenty-First Century Fox America, Inc.*, 285 F. Supp. 3d 629, 642 (S.D.N.Y. 2018) (libel per se claim under New York law requires falsity).

## 2.    The "Tweet" Is Not Direct Evidence of Actual Malice.

PV has not plausibly alleged there is direct evidence of actual malice, as Ms. Cabrera's Tweet is not evidence of actual malice at all.

First, PV does not plausibly allege (or indeed, allege at all) that CNN did not subjectively believe the Commentary's gist that PV ***is*** a source of misinformation, and that the Twitter ban fit within a "much broader crackdown" against sources of misinformation.[15] *See Berisha*, 973 F.3d at 1314-15 (plaintiff must show subjective awareness of falsity as to the "gist or sting" of the challenged statement); *Levan*, 190 F.3d at 1240 n.28 (defendant must have doubted the truth of the "gist" or "thrust" of the statements at issue).  Twitter's announcement that PV was being

---

[15] Instead, PV is using the Tweet to attack the "reliability" of Ms. Cabrera's subjective views about whether PV's ban fit into a broader crackdown on sources of misinformation. *See, e.g.*, *Turner*, 879 F.3d at 1269 (report's alleged failure to analyze certain information in law firm's report on NFL coach's alleged involvement in bullying incidents did not establish actual malice; affirming dismissal).

suspended, as well as Ms. Cabrera's Tweet of same, did not say PV was *not* a source of misinformation, and simply does not refute or draw into doubt that Ms. Cabrera doubted her statement that the suspension of PV fit into a "much broader crackdown" on sources of misinformation.[16]

Specifically, it is not enough to plead that Ms. Cabrera reported A (her Tweet) before, and B (the Commentary) later; instead, Ms. Cabrera must have subjectively known that her prior Tweet ("A") *directly contradicted* her later Commentary ("B"). It did not. Specifically, Ms. Cabrera's Tweet reported Twitter's stated reason for PV's ban. (S.A. 20-2 at 11.) Later, and without contradicting the Tweet, Ms. Cabrera and Mr. Stelter reported a separate story on social media actors enforcing their rules to stop the spread of "misinformation," and cited PV's ban as "part of a much broader crackdown." (S.A. 21-1.) The former reports the *reasons* for PV's ban; meanwhile, the latter Commentary addressed a separate trend into which PV's ban fits, i.e., a crackdown (regardless of the specific mechanism facilitating such a crackdown) on social media accounts

---

[16] In fact, Ms. Cabrera's take is just "one of a number of possible rational interpretations" of an event "that bristled with ambiguities," which precludes a finding of actual malice. *See Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971) (publication reflecting "one of a number of possible rational interpretations" of an event will not support plausible action malice claim). For example, PV vigorously contests the authenticity of Twitter's official narrative, calling it a "pretext" and alleging PV's personal belief that Twitter in fact banned PV for ulterior reasons. (A14-17 at ¶¶ 27-36.) It is precisely such debate that the actual malice standard exists to protect.

54

promoting misinformation. Ms. Cabrera's Tweet does not contradict the

Commentary, and it does not show that CNN did not subjectively believe Twitter's

ban of PV occurred as part of a larger crackdown on sources of misinformation.

## **CONCLUSION**

The District Court's Order of dismissal should be affirmed.

Respectfully submitted this 22nd day of August, 2022.

*/s/ Eric P. Schroeder*
Eric P. Schroeder
Brian M. Underwood, Jr.
Bryan Cave Leighton Paisner LLP
One Atlantic Center, 14th Floor
1201 West Peachtree Street, NW
Atlanta, Georgia 30309
Telephone:   404-572-6600
Facsimile:   404-572-6999
eric.schroeder@bclplaw.com
brian.underwood@bclplaw.com

*Attorneys for Cable News Network, Inc.*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,977 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

By: */s/ Eric P. Schroeder*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of August, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties who have filed notices of appearance in this case under the Court's CM/ECF system. I further certify that on this date, I caused the requisite number of paper copies of this brief to be dispatched to the Clerk of Court via overnight delivery by FedEx.

By: */s/ Eric P. Schroeder*